1   Joseph L. Oliva, Esq., State Bar No. 113889
2   Thomas E. Ladegaard, Esq., State Bar No. 228491
    Stephen F. Yurcich, Esq., State Bar No. 211188
3   OLIVA & ASSOCIATES ALC
    11770 Bernardo Plaza Court, Suite 350
4   San Diego, California 92128
    Telephone:  (858) 385-0491
5   Facsimile:  (858) 385-0499

6
    Attorneys for Plaintiffs, RAUL LIZALDE
7   and VEBS, INC.

**FILED**

2010 APR 20  PM 3: 07

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

ORIGINAL

8               **UNITED STATES DISTRICT COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10  RAUL LIZALDE; VEBS, INC. A        ) Civil Action File No.:
    California Corporation,            ) **10-CV-0834 LAB      RBB**
11                                     )
           Plaintiffs,                 ) **DEMAND FOR JURY TRIAL**
12                                     )
                                       ) **COMPLAINT FOR:**
13  v.                                 )
                                       ) **1.  COPYRIGHT INFRINGEMENT**
14  ADVANCED PLANNING SERVICES,        ) **2.  INJUNCTIVE RELIEF**
    INC., A California Corporation;     ) **3.  LANHAM ACT**
15  INDEPENDENT CAREER AGENCY,         ) **4.  COMMON-LAW UNFAIR**
    INC., A California Corporation; JEFF) **    COMPETITION**
16  ROEDIGER; LORI ROEDIGER;          ) **5.  UNJUST ENRICHMENT**
    MICHAEL RODMAN; ROBERT             ) **6.  BREACH OF CONTRACT**
17  PADILLA; MIRIAM FELDMAN; STAN      ) **7.  BREACH OF IMPLIED**
    FRIEDMAN; LARRY CHALMERS;          ) **    COVENANT OF GOOD FAITH**
18  PREMIER FINANCIAL SOLUTIONS,       ) **    AND FAIR DEALING**
    LLC, A Missouri Limited Liability   ) **8.  RESCISSION**
19  Company; CHARLES DZAMA; GUS        ) **9.  FRAUD**
    GONZALES; MARILYN MILLER;          ) **10. CONSTRUCTIVE FRAUD**
20  MICAH KEEL; KEEL FINANCIAL         ) **11. MISAPPROPRIATION OF**
    GROUP, LLC, A Florida Limited Liability) **    TRADE SECRETS**
21  Company; ANN OZUNA dba USA         ) **12. INTERFERENCE WITH**
    BENEFIT ADVISORS; and DOES 1       ) **    PROSPECTIVE ECONOMIC**
22  through 20, inclusive,             ) **    ADVANTAGE**
                                       ) **13. TRADE LIBEL**
23         Defendants.                 ) **14. BREACH OF CONFIDENCE**
                                       ) **15. VIOLATION OF BUSINESS &**
24                                     ) **    PROFESSIONS CODE §§ 17200**
                                       ) **16. UNJUST ENRICHMENT**
25                                     ) **17. PALMING OFF**
                                       ) **18. ACCOUNTING**
26                                     ) **19. RICO**
                                       ) **20. CIVIL CONSPIRACY**
27  _____) **21. DECLARATORY RELIEF**

28

                                1

Plaintiffs RAUL LIZALDE and VEBS, INC. (collectively referred to as "Plaintiffs") hereby allege as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction in this Court is proper under 28 U.S.C. Section 1441(b) because this action involves the laws of the United States.

2.     Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated, in this district. In addition, multiple Defendants reside in this district.

## THE PARTIES

3.     Plaintiff VEBS, INC. ("VEBS") is and at all relevant times was a California Corporation with its principal offices in San Diego County, California. VEBS was incorporated in December 2008, and was previously a sole proprietorship.

4.     Plaintiff RAUL LIZALDE ("LIZALDE") is an individual residing in San Diego County, California.

5.     Plaintiffs are informed and believe and thereon allege that Defendant ADVANCED PLANNING SERVICES, INC. ("APS") is and at all relevant times, was a California Corporation with its principal offices in San Diego County, California.

6.     Plaintiffs are informed and believe and thereon allege that Defendant INDEPENDENT CAREER AGENCY, INC. ("ICA") is and at all relevant times, was a California Corporation with its principal offices in San Diego County, California.

7.     Plaintiffs are informed and believe and thereon allege that Defendant JEFF ROEDIGER ("J. ROEDIGER") is an individual residing in San Diego County, California.

8.     Plaintiffs are informed and believe and thereon allege that Defendant LORI ROEDIGER ("L. ROEDIGER") is an individual residing in San Diego County, California.

9. Plaintiffs are informed and believe and thereon allege that Defendant MICHAEL RODMAN ("RODMAN") is an individual residing in San Diego County, California.

10. Plaintiffs are informed and believe and thereon allege that Defendant ROBERT PADILLA ("PADILLA") is an individual residing in Orange County, California.

11. Plaintiffs are informed and believe and thereon allege that Defendant MIRIAM FELDMAN ("FELDMAN") is an individual residing in Florida doing business in California.

12. Plaintiffs are informed and believe and thereon allege that Defendant STAN FRIEDMAN ("FRIEDMAN") is an individual residing in Florida doing business in California.

13. Plaintiffs are informed and believe and thereon allege that Defendant LARRY CHALMERS ("CHALMERS") is an individual residing in Missouri doing business in California.

14. Plaintiffs are informed and believe and thereon allege that Defendant PREMIER FINANCIAL SOLUTIONS, LLC ("PFS") is a Missouri limited liability company doing business in California. Plaintiff is informed and believes that CHALMERS is a principal at PFS.

15. Plaintiffs are informed and believe and thereon allege that Defendant CHARLES DZAMA ("DZAMA") is an individual residing in Orange County, California.

16. Plaintiffs are informed and believe and thereon allege that Defendant GUS GONZALEZ ("GONZALEZ") is an individual residing in Idaho doing business in California.

17. Plaintiffs are informed and believe and thereon allege that Defendant MARILYN MILLER ("MILLER") is an individual residing in Washington doing business in California.

3

18. Plaintiffs are informed and believe and thereon allege that Defendant MICAH KEEL ("KEEL") is an individual residing in Florida doing business in California.

19. Plaintiffs are informed and believe and thereon allege that Defendant KEEL FINANCIAL GROUP, LLC ("KFG") is a Florida limited liability company doing business in California. Plaintiff is informed and believes that KEEL is a principal at KFG.

20. Defendants PADILLA, FELDMAN, FRIEDMAN, CHALMERS, PFS, DZAMA, GONZALEZ, MILLER, KEEL and KFG are collectively referred to as the "AGENTS".

21. Plaintiffs are informed and believe and thereon allege that Defendant ANN OZUNA ("OZUNA") is an individual residing in Washington doing business in California. OZUNA is doing business as USA BENEFIT ADVISORS.

22. ICA, APS, RODMAN, J. ROEDIGER, L. ROEDIGER and the AGENTS were involved in a scheme to aid and abet each other to infringe upon Plaintiffs' copyrighted materials and engage in a pattern of unfair and unlawful business practices which were calculated to siphon Plaintiffs' business.

23. The true names and capacities of DOES 1 through 20, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names pursuant to California Code of Civil Procedure section 474. Plaintiffs will amend this Complaint when their true names and capacities have been ascertained.

24. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, including those described herein as DOES, were at all times herein mentioned the agents, employees, joint venturers, and/or partners, of each of the remaining Defendants, and as such, were at all times herein mentioned acting within the purpose, course and scope of said, agency, employment, joint venture, partnership

1    relationship, and with the consent, permission and ratification of the remaining
2    Defendants, and each of them.

3        25.    Plaintiffs are informed and believe and thereon allege that ROEDIGER,
4    RODMAN, ICA and APS were and are the alter egos of each other and have been
5    acting in material unison at all times to defraud Plaintiff.  ICA and APS have the same
6    officers, directors, employees and independent contractors, they share the same
7    physical address for their principal office, and they have the same agent for service of
8    process.  ROEDIGER and RODMAN completely controlled, dominated, managed,
9    operated, conducted and ratified the affairs of ICA and APS and intermingled the
10   assets of ICA and APS to suit their own personal convenience.   ROEDIGER,
11   RODMAN, ICA and APS acted as a single enterprise and benefited jointly from the
12   transactions entered into by each other.    There is such a unity of interest and
13   ownership that adherence to the fiction of separate existence of ICA and APS as
14   separate and distinct entities would permit an abuse of the corporate privilege and
15   would sanction fraud and injustice upon Plaintiffs.  As individuals acting under the
16   Defendant corporate entities, the individuals derived income, revenue and profit
17   distribution which was generated fraudulently under the purported corporate veil.
18   Defendants, and each of them, usurped, misappropriated and converted Plaintiffs'
19   copyrighted information, trademarks and trade secrets in a fraudulent and malicious
20   manner while acting under the auspices of the corporate entities.

21       26.    Plaintiffs are informed and believe and thereon allege that KEEL and
22   KFG were and are the alter ego of each other and have been acting in material unison
23   at all times to defraud Plaintiffs.  KEEL and KFG have the same officers, directors,
24   employees and independent contractors, they share the same physical address for their
25   principal office, and they have the same agent for service of process.   KEEL
26   completely controlled, dominated, managed, operated, conducted and ratified the
27   affairs of KFG and intermingled the assets of KFG to suit their own personal
28   convenience.  KEEL and KFG acted as a single enterprise and benefited jointly from

the transactions entered into by each other.  There is such a unity of interest and ownership that adherence to the fiction of separate existence of KEEL and KFG as separate and distinct entities would permit an abuse of the corporate privilege and would sanction fraud and injustice upon Plaintiffs.  As an individual acting under the Defendant corporate entity, the individual derived income, revenue and profit distribution which was generated fraudulently under the purported corporate veil. Defendant usurped, misappropriated and converted Plaintiffs' copyrighted information, trademarks and trade secrets in a fraudulent and malicious manner while acting under the auspices of the corporate entities.

27.   Plaintiffs are informed and believe and thereon allege that CHALMERS and PFS were and are the alter ego of each other and have been acting in material unison at all times to defraud Plaintiffs.  CHALMERS and PFS have the same officers, directors, employees and independent contractors, they share the same physical address for their principal office, and they have the same agent for service of process.   CHALMERS completely controlled, dominated, managed, operated, conducted and ratified the affairs of PFS and intermingled the assets of PFS to suit their own personal convenience.  CHALMERS and PFS acted as a single enterprise and benefited jointly from the transactions entered into by each other.  There is such a unity of interest and ownership that adherence to the fiction of separate existence of CHALMERS and PFS as separate and distinct entities would permit an abuse of the corporate privilege and would sanction fraud and injustice upon Plaintiffs.   As an individual acting under the Defendant corporate entity, the individual derived income, revenue and profit distribution which was generated fraudulently under the purported corporate veil.   Defendant usurped, misappropriated and converted Plaintiffs' copyrighted information, trademarks and trade secrets in a fraudulent and malicious manner while acting under the auspices of the corporate entities.

///

///

6

## VEBS BUSINESS OPERATIONS

28.    LIZALDE, the principal and owner of VEBS, possesses a great deal of knowledge and experience in life insurance, annuities and long term care, and an expert understanding of retirement programs for federal employees.  LIZALDE has been a licensed financial and life insurance representative since 1993.  The federal retirement programs are varied and complex, and LIZALDE has spent sixteen years creating and revising a program to assist federal employees with their retirement planning and understanding of options and available benefits.

29.    Plaintiffs secured contracts with federal agencies to explain the retirement programs to their employees, and this often led to placement and sale of various programs, including life insurance, annuities and long term care.  Over time these programs and presentations evolved and Plaintiffs devoted considerable time and effort to improve the program and presentation materials.

30.    Specifically, over the years, LIZALDE studied, analyzed, evaluated, and became an expert in the field of retirement benefits available to federal employees. LIZALDE designed and created a database of common questions from federal employees about retirement benefits and financial planning.  LIZALDE also designed and developed Power Point Presentations ("PPP") and a booklet titled *Understanding Your Government Benefits*," which were used in concert at presentations to federal agencies.   The presentations are formatted according to the time allotted by the agencies, and vary in length between one hour, half-day and full-day.  The database of answers to the employees' questions was incorporated into the PPP.   The PPP and booklets are tailored to each particular agency, which provides employees with specific and targeted information with respect to the unique needs of the employees and programs available.   The PPP consist of a variety of unique and one-of-a-kind explanation and summary of benefits and are geared for the distinct needs of the employees.  Through years of hard work and dedication of LIZALDE, Plaintiffs have developed into a successful business venture.

31.     Federal employees meet with Plaintiffs individually for one-on-one retirement counseling, and for the selection of various retirement programs.  Plaintiffs also created a web-based retirement calculator, which is proprietary and password-secured. The PPP, booklets, presentation and retirement calculator are collectively referred to as the "VEBS Program."

32.     The presentations to the agencies and the resulting purchases, including life insurance, annuities and long term care, became very profitable for Plaintiffs. Plaintiffs also developed a valuable network of contacts in the federal agencies, and cultivated a reputation for hard work, integrity and expertise in the federal programs and financial planning.

33.     LIZALDE understands the critical importance of establishing and protecting his company's trade secrets and is keenly aware that the proprietary information is critical to the success of the business.   In order to preserve the proprietary nature of trade secrets, Plaintiffs copyrighted the following written materials (copies of the Copyright Registrations are attached hereto as **Exhibit "A"**):

| Date of First Publication | Registration Number | Title/Description |
|---|---|---|
| 8/20/08 | TX0007022431 | Understanding Your Government Benefits |
| 8/29/08 | TX0007018244 | Civil Service Benefits PowerPoint (full Version with Notes) |
| 1/12/09 | TX0007022524 | Civil Service Benefits (Military) |
| 8/29/08 | TX0007022532 | Civil Service Benefits FERS/CSRS |
| 8/29/08 | TX0007022511 | Civil Service Benefits FERS/CRS Lunch Program |
| 8/29/08 | TX0007022508 | Civil Service Benefits FERS |
| 8/29/08 | TX0007022518 | Civil Service Benefits FERS/CSRS Short Class |

8

| 4/30/09 (Registration Date) | PA0001628749 | CD-ROM Federal Employee Benefits Information |
|---|---|---|

34.     Among these registrations, Plaintiffs developed a master PPP, and created derivative works therefrom which were tailored to specific agencies and time formats.

35.     At all materials times set forth herein, Defendants conspired to secretly and without permission, consent, or license, misappropriate and infringe upon the protected materials set forth above.  Specifically, Defendants had access to Plaintiffs' original work of authorship and Defendants violated specific, exclusive rights owned by Plaintiffs at the time of the infringement.

## MARKETING AGREEMENT

36.     LIZALDE was introduced to RODMAN and ROEDIGER, who are principals at ICA and APS.  LIZALDE, RODMAN and ROEDIGER developed a business venture whereby LIZALDE's knowledge regarding federal retirement benefits and the VEBS Program would be implemented by the resources of ICA and APS.  LIZALDE trusted RODMAN and ROEDIGER, and believed that contracting with them would enable his business to grow.

37.     Before Plaintiffs shared any copyrighted or confidential trade secret information with ICA/APS, Plaintiffs first required that RODMAN sign a Confidentiality Agreement on May 28, 2008.  (An exemplar of a Confidentiality Agreement is attached hereto as **Exhibit "B".**)  J. ROEDIGER and L. ROEDIGER also executed Confidentiality Agreements.

38.     In an effort to promote the business venture between VEBS and ICA/APS, J. ROEDIGER and L. ROEDIGER began soliciting independent insurance agents and federal agencies across the country.  Commencing in July 2008, and pursuant to an oral marketing agreement that was in the process of being reduced to writing, and in accordance with the Confidentiality Agreement, Plaintiffs released the

confidential VEBS Program materials to ICA and APS, for distribution to their independent contractor agents, including the AGENTS, all of whom were required to sign confidentiality agreements.  Pursuant to the Confidentiality Agreement and the oral marketing agreement, ICA and APS, as well as the AGENTS, began holding themselves out to the federal agencies as being employed by or affiliated with VEBS. LIZALDE allowed this to happen because ROEDIGER and RODMAN made repeated oral representations of their good faith and honest intentions, and that there would be strict compliance with the Confidentiality Agreement.

39.     To memorialize their prior oral understanding, on October 28, 2008, Plaintiffs and ICA executed a Marketing Agreement which gave ICA license to use the VEBS Program to provide workshops to federal employees.  The Confidentiality Agreement was incorporated into the Marketing Agreement.   (A copy of the Marketing Agreement is attached hereto as **Exhibit "C".**)  The material terms of the Marketing Agreement are as follows:

    a. VEBS remained the sole owner of the VEBS Program, with ICA having a license to use the VEBS Program to conduct workshops on an exclusive basis;

    b. The contents of the VEBS Program were to remain confidential and proprietary, and this expressly included, but was not limited to, the list of confidential information at Schedule 1 of the Marketing Agreement;

    c. ICA was prohibited from modifying or creating or utilizing any derivative works of the VEBS Program without Plaintiffs' written consent;

    d. ICA and VEBS were to split 50% of the commissions (known as "overrides") and bonuses paid by life insurance carriers, annuity companies and long term care companies;

    e. VEBS had the right to terminate;

f. VEBS had the right to seek permanent injunctive relief for any violation; and

g. ICA was to provide VEBS with monthly sales and production reports.

40. Pursuant to the Confidentiality Agreement and the oral marketing agreement (before it was reduced to writing), L. ROEDIGER assumed the responsibility for marketing the VEBS Program to the federal agencies. ICA's agents administering the VEBS Program were obligated to pay VEBS a fee of $750 for training under the Program. J. ROEDIGER requested that L. ROEDIGER be retained to provide the marketing, and she would be compensated at the rate of $600 for every agent who joined the VEBS program. The agents paid the $750 directly to VEBS, and VEBS then paid $600 directly to L. ROEDIGER. LIZALDE agreed to this arrangement because L. ROEDIGER appeared eager to accept this responsibility.

41. The agents were also to pay VEBS $350 per month for access to the VEBS Program materials, and they submitted credit card authorizations to Plaintiffs.

42. Under the auspices of the VEBS name, all Defendants contacted federal agencies, but failed and refused to make full disclosure to LIZALDE regarding their contacts and their progress within the agencies, and regarding the employees who purchased financial planning products. Further, all Defendants failed to provide the required monthly reports.

43. The monthly reports were critical, as they would enable LIZALDE to evaluate the success of the Marketing Agreement and to track the commissions owed. In addition, LIZALDE needed to document the contacted agencies in order to maintain confidentiality of the VEBS Program.

44. In early 2009, LIZALDE complained to RODMAN and ROEDIGER that no monthly or marketing reports had been issued, and RODMAN and ROEDIGER again promised and reassured Plaintiffs that monthly reports containing full disclosure of sales and revenue would be made. However, ICA and APS only provided one

report, which was incomplete.  LIZALDE made repeated requests for information, to no avail.  Also, ICA and APS failed to pay commissions owed to Plaintiffs.

45.    Despite the fact that L. ROEDIGER was being paid to market the VEBS Program to the federal agencies, LIZALDE was constantly fielding questions from the agents, with queries about how to gain access to the federal agencies, how to market the various programs to the employees, and how the VEBS Program works. LIZALDE did his best to assist the marketing to the agencies, despite L. ROEDIGER's compensated assumption of this role, because Plaintiffs wanted the Marketing Agreement to be successful.

46.    ICA's agents complained to Plaintiffs about a lack of access to the federal agencies and the lack of workshops, and Plaintiffs started receiving demands for refunds and cancellation of their monthly fees.  The agents contended that they were not getting any value for their monthly fee.   Moreover, J. ROEDIGER, unbeknownst to Plaintiffs, falsely advised the agents that they no longer needed to pay the monthly fee to VEBS because the monthly fee only covered the software.  This prompted more agents to cancel their monthly fees and to demand refunds.

47.    Further, without Plaintiffs' knowledge or consent, ICA's agents started using the VEBS logo and name, holding themselves out to the federal agencies and employees as VEBS employees.  CHALMERS even created what purported to be a VEBS website.

48.    Based on these violations, on June 4, 2009, VEBS sent a cease and desist letter to RODMAN, ROEDIGER, ICA and APS that the Marketing Agreement was terminated for cause.  The cease and desist letter was also sent directly to ICA's agents, specifically including the AGENTS. The cease and desist letter was sent because: (a) ICA was not paying commissions owed to VEBS; (b) ICA was developing an unauthorized derivative program; (c) ICA was in violation of copyright and misappropriated trade secrets; and (d) ICA failed to generate sales and marketing reports.

49.   In March 2009, before Plaintiffs sent the cease and desist letter, J. ROEDIGER was already courting Plaintiffs' competitors for a new marketing agreement.   J. ROEDIGER represented to a competitor that Plaintiffs were already "out of the picture," even though the Marketing Agreement was active.   ICA and APS were therefore looking to abandon the Marketing Agreement and use the VEBS Program in a new business venture with a new partner, without compensating or accounting to Plaintiffs.   RODMAN, ROEDIGER, ICA and APS did not make their intentions known to Plaintiffs because Defendants did not want to disrupt access to the VEBS Program materials and LIZALDE's advice and expertise.

50.   On June 7, 2009, PADILLA came to Plaintiffs' offices to request permission to continue using the VEBS Program, notwithstanding the cease and desist order.   LIZALDE refused to allow PADILLA to continue using the VEBS Program under any circumstances.   PADILLA ignored this express instruction and continued to use the VEBS Program without permission, consent or knowledge of Plaintiffs. PADILLA also created derivative works of the VEBS Program, which was sold to agents of ICA/APS.

### TERMINATION AGREEMENT

51.   In October 2009, ICA and VEBS executed the Termination Agreement, which functioned to wrap up the conditions of the Marketing Agreement.   (A copy of the Termination Agreement is attached hereto as **Exhibit "D".**)   The effective date of the Termination Agreement was June 4, 2009 (the date of the cease and desist order). Although APS was not a party to the Termination Agreement, it expressly acknowledged and consented to its terms.   Also, APS was acting as the alter ego of the other Defendants.   The material terms of the Termination Agreement include the following:

      a. ICA and APS would cease using the VEBS Program as of June 4, 2009;

///

13

b. ICA would provide complete and current sales reports of the VEBS Program, and to provide these reports before Plaintiffs executed the Termination Agreement;

c. ICA would provide all past due compensation to Plaintiffs before Plaintiff executed the Termination Agreement.  Plaintiffs would also be timely paid for all remaining or pending business generated through the VEBS Program;

d. All confidential or proprietary materials were to be returned or deleted by October 15, 2009, and ICA and its agents were to submit a certification regarding the same;

e. The Parties agreed not to disparage each other;

f. ICA was to notify its agents of the Termination Agreement within five days of execution;

g. The Parties released each other for causes of action arising before the effective date of the Termination Agreement, June 4, 2009.  The release was predicated upon ICA and APS complying with subparagraphs (a) through (d).

52.    LIZALDE was reassured that all use of the VEBS Program would cease and that full accounting and payment would be made.

53.    By the time the Termination Agreement was signed APS and ICA had only tendered $17,531.85 to Plaintiffs, which was less than the past due compensation owed.  Plaintiffs were only provided with limited sales reports from one insurance company, and Plaintiffs were therefore provided with incomplete information.  In addition, APS and ICA never accounted to Plaintiffs for sales of annuities or long term care.  Only after Plaintiffs discovered the existence of annuities sales through ING did APS and ICA partially account for such annuities.  Accordingly, APS and ICA were in violation of the Termination Agreement at the time it was signed and concealed this fact from Plaintiffs.

54.   Through its counsel, ICA falsely represented to Plaintiffs that ICA and its agents were no longer using the VEBS Program as of June 4, 2009.

55.   Notwithstanding the executed Termination Agreement, ICA never certified to Plaintiffs that all confidential and copyrighted VEBS Program materials had been returned or deleted from its computer and/or electronic systems.   To the contrary, APS and ICA retained electronically stored data and misappropriated the use of such information.   ICA also waited approximately one month before advising its agents of the existence of the Termination Agreement.

## CONTINUED VIOLATIONS

56.   In October 2009 LIZALDE learned that PADILLA was using proprietary and copyrighted materials associated with the VEBS Program in classes for IRS employees.   A cease and desist letter was issued to PADILLA.   Because PADILLA previously acknowledged VEBS' copyright in its materials, PADILLA's use of the VEBS Program was willful.   ICA then purportedly paid VEBS for its share of PADILLA's revenue.   In November 2009 LIZALDE learned that, notwithstanding the cease and desist letter, PADILLA continued to willfully use the VEBS Program. Plaintiffs demanded that PADILLA surrender the profits from the policies sold, but PADILLA never responded to this demand, nor did he cease using the copyrighted materials.

57.   In January 2010, LIZALDE learned that RODMAN and ROEDIGER, on behalf of ICA and/or APS, colluded and/or conspired to engage in the following activities, all of which occurred subsequent to the Termination Agreement and which constitute unfair competition:

   a. Defendants sent confidential VEBS Program materials to third parties contrary to the Termination Agreement.   Further, APS and ICA failed to return or delete the confidential VEBS Program materials and continued to use the materials for their business purposes, generating sufficient income/revenue which, in turn, was misappropriated;

15

  b. Defendants disparaged VEBS by stating to third parties that VEBS' materials were "inaccurate" and that Defendants' materials were superior when Defendants were in fact using VEBS Program materials;

  c. Defendants used the VEBS Program and created derivative works therefrom.

  d. Defendants delivered the copyrighted VEBS Program materials to a publisher for additional copying.

  58. ICA failed to provide full and complete accounting and compensation owed under the Marketing Agreement. In addition, ICA failed to return or delete all VEBS Program materials, or to submit a certification regarding the same. Further, Defendants continued to use the VEBS Program materials despite the mutual termination of the Marketing Agreement, and committed willful copyright infringement thereby. As such, these violations of the Termination Agreement render the releases contained therein null and void for lack of consideration and for fraudulent inducement.

  59. ICA and the AGENTS are presently working with OZUNA in a new business venture, which infringes upon Plaintiffs' copyrighted materials. OZUNA is publishing a PPP which is an unauthorized derivative work of Plaintiffs' VEBS Program materials, and is substantially identical to the VEBS Program. Plaintiffs are informed and believe that ICA and the AGENTS modified the VEBS Program with nominal, cosmetic changes to create a derivative work, which they are now using in concert with OZUNA. OZUNA is presently selling this derivative work to agents in her network for $500 a copy.

///

///

///

///

# FIRST CAUSE OF ACTION

## Copyright Infringement

## (Against All Defendants)

60.    Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 59 of this Complaint.

61.    VEBS is the owner of several valid copyrights associated with the VEBS Program, and VEBS' copyrights constitute protected and original expressions.  At all material times, VEBS has complied in full with the Copyright Act.  True and correct copies of VEBS' copyright registrations are attached hereto as **Exhibit A**.  VEBS has been and still is the sole owner of all rights, title, and interest in the copyrighted VEBS Program materials.

62.    Subsequent to VEBS' copyright of the VEBS Program materials, and with full knowledge of VEBS' rights thereto, Defendants infringed upon VEBS' copyright by printing and distributing the VEBS Program materials for their own unauthorized use in a competing business venture.  Defendants' acts were performed without permission, license, or consent of VEBS.

63.    Defendants, and each of them, had access to VEBS' original work of authorship and copied the copyrighted VEBS Program materials.  Defendants violated the specific, exclusive rights owned by VEBS at the time of the infringement and the acts of infringement occurred both prior to and subsequent to the effective date of the Termination Agreement of June 4, 2009.  Defendants, and each of them, also created unauthorized derivative works of the VEBS Program materials.   Neither the Marketing Agreement nor the Termination Agreement authorized Defendants to create derivative works or to use such work after termination.

64.    There is a substantial similarity between the copied and derivative materials and the VEBS Program materials.   Before and after the Termination Agreement Defendants reproduced, distributed, and utilized the protected material for their own profit, all without Plaintiffs' permission or consent.

17

65.   With knowledge of VEBS' copyrights, the cease and desist order, and the Termination Agreement, ICA and the AGENTS have created unauthorized derivative works of the VEBS Program, and they are marketing the derivative program through OZUNA, under the auspices of USA Employee Benefits.  OZUNA is presently selling the derivative program to her network of agents for financial gain.

66.   Defendants were notified by Plaintiffs that Defendants had infringed upon the copyrights, and upon information and belief, Defendants have continued to infringe.  Defendants' infringement of VEBS' copyrights was therefore committed willfully.  OZUNA's infringement was a recent discovery, and due to the immediate ongoing harm, Plaintiffs have not had an opportunity to provide OZUNA with notice of the infringement.  Plaintiffs are not presently alleging that OZUNA's infringement was willful, but they reserve the right to amend according to proof.

67.   Defendants' willful acts of copyright infringement justify the award of the maximum measure of statutory damages of $150,000 for each act of infringement of VEBS' copyrights in a total amount estimated to be not less than five-hundred thousand dollars ($500,000), together with costs and attorneys fees.  Alternatively, VEBS is entitled to the actual damages incurred as a result of Defendants' infringement and any additional profits of Defendants attributable to the infringement, together with costs and attorneys fees.

68.   Defendants' unauthorized copying and derivative works were made with specific knowledge of Plaintiffs' cease and desist demand and the Termination Agreement, and Defendants therefore acted willfully and maliciously.

69.   As a direct and proximate result of the breaches by Defendants, VEBS has incurred substantial attorneys' fees and costs, and delayed sales, in an amount not yet ascertained.  VEBS has also been damaged in the amount of Defendants' profits made thereby.  Unless restrained and enjoined, Defendants' acts of copyright infringement as alleged will cause VEBS irreparable injury, and injunctive relief is therefore warranted.

## SECOND CAUSE OF ACTION

### Injunctive Relief

### (Against All Defendants)

70.   Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 69 of this Complaint.

71.   At all material times Defendants have had complete and continuing access to the copyrighted material and Defendants have developed a competing business by copying the VEBS Program materials.

72.   Defendants have continuously misappropriated the VEBS Program materials by creating unauthorized copies and derivative works. Defendants are using the VEBS Program materials and derivative works to market themselves to federal agencies and their employees, thus siphoning business away from Plaintiffs. Furthermore, on information and belief, Defendants have substantially duplicated the VEBS Program materials.  Defendants are also disparaging Plaintiffs' name and reputation in the industry by stating that Plaintiffs are dishonest and incompetent, and that the VEBS Program cannot be trusted.  Plaintiffs will therefore suffer irreparable harm if a temporary restraining order is not issued, followed by a preliminary and permanent injunction.

73.   ICA and APS are operating and marketing their businesses solely through the use of the VEBS Program and derivative works created therefrom, and it is therefore necessary that ICA and APS immediately cease marketing their businesses and performing presentations to federal agencies and their employees.

74.   OZUNA operates a federal benefits advisory which competes with VEBS, and she is implementing a derivative Power Point Presentation and booklet which infringes upon the copyrighted VEBS Program.  This is likewise causing irreparable harm to Plaintiffs.

///

///

75.    Injunctive relief is authorized and appropriate because it is a permissible remedy for, *inter alia*, copyright infringement, breach of contract, trade secret misappropriation and violation of Business & Professions Code § 17200.

## THIRD CAUSE OF ACTION

### Lanham Act, 15 U.S.C. § 1125(a)

### (Against All Defendants)

76.    Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 75 of this Complaint.

77.    Upon information and belief, beginning on or about June 4, 2009, and continuing thereafter, Defendants produced and distributed to various federal agencies, federal employees and agents, material which are virtually identical to the copyrighted VEBS Program.

78.    Defendants' distribution of material which consists primarily of the VEBS Program is likely to confuse and mislead federal agencies and their employees into believing that Defendants' materials are endorsed or sponsored by Plaintiffs or in some way connected with Plaintiffs.  This confusion is likely to influence federal agencies and their employees as to whether to use Defendants' or Plaintiffs' services.

79.    The aforementioned acts constitute false designation of origin and false descriptions tending to cause confusion in the marketplace in violation of the Lanham Act, 15 U.S.C. § 1125(a).

80.    Defendants entered their program materials in interstate commerce, as they marketed their services to federal agencies across the country.

81.    By reason of the foregoing acts, Defendants committed unfair and deceptive acts and practices and utilized unfair methods of competition.  Plaintiffs have therefore suffered and will continue to suffer substantial damage to its business in the form of diversion of trade, loss of profits, a dilution of the value of its business, loss of goodwill, and damages to its reputation, all in amounts which are not yet fully ascertainable.

82.   Unless restrained and enjoined, Defendants' false designation or origin and false description and representations tending falsely to describe Defendants' Program Material as alleged above will cause Plaintiffs irreparable injury.

## FOURTH CAUSE OF ACTION

### Common-Law Unfair Competition

### (Against All Defendants)

83.   Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 82 of this Complaint.

84.   Upon information and belief, beginning on or about June 4, 2009 and continuing thereafter, Defendants produced and distributed to various federal agencies and their employees the VEBS Program materials and substantially identical derivative works, without Plaintiffs' consent and despite a cease and desist order.

85.   Such distribution is likely to confuse and mislead federal agencies and their employees into believing that Defendants are endorsed or sponsored by Plaintiffs or somehow associated with Plaintiffs.  This confusion is likely to influence the decision of federal agencies and their employees as to the identity of the party with whom they are transacting business.  These acts constitute unfair competition.

86.   By reason of Defendants' acts of unfair competition, Plaintiffs have and will continue to suffer substantial damage to its business in the form of diversion of trade, loss of profits, loss of goodwill, and damage to its reputation, all in amounts which are not yet fully ascertainable.

87.   Unless restrained and enjoined, Defendants' acts of unfair competition as alleged above will cause Plaintiffs irreparable harm and injury.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

### (Against All Defendants)

88.   Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 87 of this Complaint.

89.     In the Termination Agreement ICA and APS promised to return or destroy all VEBS Program materials, and to fully compensate and account to Plaintiffs for all profits made under the Marketing Agreement.  The AGENTS were also ordered to cease all use of the VEBS Program materials.

90.     All Defendants have retained the VEBS Program materials, and a benefit has therefore been conferred upon them.  Because all Defendants continue to use and profit from the VEBS Program materials, they have been unjustly enriched thereby, and Plaintiffs have been damaged in an amount to be proved at time of trial.

## SIXTH CAUSE OF ACTION

### Breach of Contract

### (Against ICA and APS)

91.     Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 90 of this Complaint.

92.     The Termination Agreement constitutes a valid contract between Plaintiffs and ICA/APS.  At all material times Plaintiffs have fully performed under the Termination Agreement.

93.     ICA and APS breached the Termination Agreement in the following respects:

  a. Failing to provide complete and current reports of sales and marketing that have been generated as a result of the Marketing Agreement, and by failing to provide any reports regarding sales of annuities or long term care;

  b. Failing to tender all compensation due under the Marketing Agreement, and failing to tender overrides for subsequent policy years;

  c. Failing to return all confidential and proprietary materials, and/or by failing to delete all such materials and to submit a certification regarding the same;

22

d. Disparaging Plaintiffs to third parties regarding matters concerning the Termination Agreement;

e. Failing to notify their agents within five days of execution that the Marketing Agreement has been terminated and that they are no longer to use the VEBS Program materials;

f. Continuing to misappropriate and pirate Plaintiffs' confidential and proprietary trade secrets.

94.   Ceasing all use of the VEBS Program, paying compensation, accounting and returning the VEBS Program materials, including electronically stored data, were conditions precedent to the releases contained within the Termination Agreement. Because these conditions precedent remain unsatisfied, the releases are of no effect.

95.   As a direct and proximate result of the material breaches by ICA and APS of the Termination Agreement, Plaintiffs have been damaged in an amount to be proven at time of trial.

## SEVENTH CAUSE OF ACTION

### Breach of Implied Covenant and Fair Dealing

### (Against ICA and APS)

96.   Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 95 of this Complaint.

97.   Through the Termination Agreement, ICA and APS impliedly agreed to refrain from doing anything to deprive Plaintiffs of the fruits of the Termination Agreement, and that they would be honest with Plaintiffs in their business dealings.

98.   The Termination Agreement obligates ICA and APS to account and pay for their use of the VEBS Program.  ICA and APS breached the implied covenant of good faith and fair dealing by concealing their profits under the Termination Agreement, refusing to account.  This prevented Plaintiffs from ascertaining the commissions owned, and this deprived Plaintiffs of the fruits of the Termination Agreement.

99.   ICA and APS further breached the implied covenant of good faith and fair dealing by failing to return and/or delete the confidential VEBS Program materials, and by continuing to use such materials and creating derivative works, thus damaging Plaintiffs' business interests.

100.   ICA and APS further breached the implied covenant of good faith and fair dealing by failing to instruct and direct their agents to return the confidential VEBS Program materials.  In fact, to the contrary, ICA and APS colluded with their agents to continue to utilize VEBS Program materials without Plaintiffs' knowledge and consent, and in the absence of a licensing agreement, with the intent to profit from the use of VEBS Program materials.

101.   As a direct and proximate result of the material breaches by APS and ICA of the Termination Agreement, Plaintiffs have been damaged in an amount to be proven at time of trial.

## EIGHTH CAUSE OF ACTION

### Rescission

### (Against ICA and APS)

102.   Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 101 of this Complaint.

103.   In the Termination Agreement ICA and APS promised to provide a full accounting and compensation to Plaintiffs for all business generated under the Marketing Agreement.   ICA and APS also promised to return or delete all VEBS Program materials and submit a certification regarding the same, and to cease using all VEBS Program materials.

104.   ICA and APS failed to perform all of these material promises, and these promises served as the consideration for the Termination Agreement.  Specifically, the releases contained within the Termination Agreement were conditioned upon these promises.  The Termination Agreement is therefore void for failure of consideration,

1 | in whole or in part, and Plaintiffs are entitled to rescission of the Termination
2 | Agreement.

### NINTH CAUSE OF ACTION

### Fraud

### (Against ICA, APS, J. RODMAN, L. RODMAN and ROEDIGER)

105. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 104 of this Complaint.

106. At the outset of their business relationship, it was the secret intention of ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER to misappropriate and steal the VEBS Program Materials. ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER covertly used the VEBS Program to set up a competing business.

107. Prior to the execution of the Termination Agreement, ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER misrepresented sales volume and retained secret profits, concealing from Plaintiffs the amount of income/sales generated.

108. Subsequent to the effective date of the Termination Agreement, ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER conducted business with government agencies and their employees, while holding themselves as affiliated with VEBS. ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER then later used the VEBS Program materials and the VEBS name. But for this purported affiliation with VEBS, ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER would have been unable to obtain an audience with the government agencies and their employees, and ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER would have been unable to enter into this unique marketplace.

109. Plaintiffs were fraudulently induced into a confidential business relationship with ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER, who represented that they were honest and ethical businesspeople, and LIZALDE justifiably relied upon the representations of ICA, APS, RODMAN, J. ROEDIGER

1    and L. ROEDIGER that they would properly account for their profits and not
2    misappropriate the VEBS Program materials.

3         110.   In receiving a license to use and implement the VEBS Program and in
4    executing the Termination Agreement, ICA, APS, RODMAN, J. ROEDIGER and L.
5    ROEDIGER affirmatively represented that they would account to Plaintiffs for the
6    profits made thereby, and that they would pay commissions to Plaintiffs.  ICA, APS,
7    RODMAN, J. ROEDIGER and L. ROEDIGER made these promises without any
8    intention of performing, as evidenced by the course of dealing between the parties,
9    and by Defendants' conduct subsequent to the Termination Agreement, ICA, APS,
10   RODMAN, J. ROEDIGER and L. ROEDIGER knew of the falsity of these promises
11   at the time they were made.  APS, RODMAN, J. ROEDIGER and L. ROEDIGER are
12   parties to these representations and they operated under the auspices of ICA.

13        111.   Before the commencement of their business relationship with Plaintiffs,
14   ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER had no contacts within the
15   government agencies, they did not have sufficient knowledge concerning the available
16   federal retirement programs, and they lacked the requisite expertise, contacts and/or
17   reputation to obtain an audience with the government agencies and their employees.
18   ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER therefore used Plaintiffs'
19   good name and reputation to establish a foothold in this unique marketplace. ICA,
20   APS, RODMAN, J. ROEDIGER and L. ROEDIGER used and misappropriated
21   confidential information owned by Plaintiffs, including the VEBS Program materials,
22   to receive access to government agencies to market their services.  However, ICA,
23   APS, RODMAN, J. ROEDIGER and L. ROEDIGER failed to account to Plaintiffs for
24   their profits and proceeded to refuse to account for and pay for all commissions.  ICA,
25   APS, RODMAN, J. ROEDIGER and L. ROEDIGER therefore capitalized upon
26   LIZALDE's trust and confidence and they stole business from Plaintiffs.  As a direct
27   and proximate result of these misrepresentations, Plaintiffs have been damaged in the
28

amount of the profits obtained by ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER.

112. In addition to these material misrepresentations, ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER concealed their profits under the Marketing Agreement and the Termination Agreement and they failed to account, thus preventing Plaintiffs from ascertaining the amount of the unpaid commissions or the extent of the copyright infringement.

113. As a direct and proximate result of this concealment, Plaintiffs have been damaged in the amount of the unascertained and unpaid commissions.

114. This conduct was malicious, oppressive and despicable, in conscious disregard of Plaintiffs' rights, and stems from improper and evil motives, including their desire to avoid and conceal their obligations to Plaintiffs, and to profit from Plaintiffs' industry and hard work. Punitive and exemplary damages are therefore warranted. To the extent these acts were committed by employees, APS and ICA had advance knowledge of the unfitness of the employees, they employed them with a conscious disregard of Plaintiffs' rights, and they authorized or ratified the employees' conduct. Such knowledge, conscious disregard, authorization or ratification was by officers, directors, and/or managing agents of APS and ICA.

## TENTH CAUSE OF ACTION

### Constructive Fraud

**(Against ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER)**

115. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 114 of this Complaint.

116. By entering into the Marketing Agreement, Plaintiffs agreed to share the confidential and proprietary VEBS Program. This created a fiduciary and/or confidential relationship between Plaintiffs and ICA. APS, RODMAN, J. ROEDIGER and L. ROEDIGER are parties to this fiduciary and/or confidential relationship through the alter ego doctrine.

27

117.  ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER breached this fiduciary and/or confidential relationship, before and after the effective date of the Termination Agreement, by: (1) concealing their profits by producing incomplete and misleading accounting; (2) failing to pay commissions; (3) committing copyright infringement; and (4) capitalizing upon Plaintiffs' name and reputation and holding themselves out as being authorized to act on Plaintiffs' behalf, thus siphoning business away from Plaintiffs.

118.  This created an unfair advantage for ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER, as they capitalized upon Plaintiffs' industry, reputation, connections and confidential information.

119.  LIZALDE justifiably relied upon the representations of ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER, because the parties entered into a confidential and fiduciary business relationship, and ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER represented themselves to LIZALDE as honest, trustworthy and ethical businesspeople.

120.  As a direct and proximate result of these misrepresentations, Plaintiffs have been damaged in the amount of the profits obtained by ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER, and by the unpaid commissions.

121.  This conduct was malicious, oppressive and despicable, in conscious disregard of Plaintiffs' rights, and stems from improper and evil motives, including their desire to avoid and conceal their obligations to Plaintiffs, and to profit from Plaintiffs' industry and hard work.  Punitive and exemplary damages are therefore warranted.  To the extent these acts were committed by employees, APS and ICA had advance knowledge of the unfitness of the employees, they employed them with a conscious disregard of Plaintiffs' rights, and they authorized or ratified the employees' conduct.  Such knowledge, conscious disregard, authorization or ratification was by officers, directors, and/or managing agents of APS and ICA.

///

PLAINTIFFS' COMPLAINT

### ELEVENTH CAUSE OF ACTION

### Misappropriation of Trade Secrets

### (Against All Defendants except OZUNA)

122.   Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 121 of this Complaint.

123.   The VEBS Program materials derive independent economic value from not being generally known to the public or from others who can obtain economic value from its disclosure and use.  Plaintiffs engaged in reasonable efforts to maintain the secrecy and confidentiality of the VEBS Program materials, and they constitute trade secrets.

124.   Through ICA's execution of the Marketing Agreement and the Termination Agreement, Defendants knew that the VEBS Program materials constituted trade secrets.

125.   Defendants knowingly acquired the trade secrets by improper means and they improperly disclosed them to third parties, despite a duty to maintain confidentiality.

126.   This conduct was malicious, oppressive and despicable, in conscious disregard of Plaintiffs' rights, and stems from improper and evil motives, including their desire to siphon business from Plaintiffs, and to profit from Plaintiffs' industry and hard work.  Punitive and exemplary damages are therefore warranted.  To the extent these acts were committed by employees, APS and ICA had advance knowledge of the unfitness of the employees, they employed them with a conscious disregard of Plaintiffs' rights, and they authorized or ratified the employees' conduct.  Such knowledge, conscious disregard, authorization or ratification was by officers, directors, and/or managing agents of APS and ICA.

///

///

///

29

### TWELFTH CAUSE OF ACTION

**Interference with Prospective Economic Advantage**

**(Against ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER)**

127. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 126 of this Complaint.

128. Plaintiffs had actual and prospective business relationships with numerous government agencies, which provided Plaintiffs access to market retirement and insurance services to the employees of such agencies.

129. By executing the Termination Agreement, ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER promised that they would respect the confidentiality of the VEBS Program materials. ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER further promised that they would account to Plaintiffs for their marketing profits and that they would pay commissions to Plaintiffs. This created a duty of care and a special relationship between the parties.

130. Subsequent to the effective date of the Termination Agreement, ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER interfered with Plaintiffs' existing and prospective business relationships with various government entities, and their employees, by holding themselves out as Plaintiffs and/or as Plaintiffs' agent, while retaining and concealing all profits. ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER continued with this course of conduct despite being ordered by Plaintiffs to cease and desist, and subsequent to the effective date of the Termination Agreement. Such conduct is independently wrongful because it constitutes, *inter alia*: copyright infringement; actual and constructive fraud; trade secret misappropriation; unfair business practices; and breach of confidence.

131. In addition, subsequent to the effective date of the Termination Agreement ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER defamed Plaintiffs to various government entities in a scheme to siphon actual and prospective

business from Plaintiffs.   Such conduct is independently wrongful because it constitutes trade libel.

132.   Such conduct does not qualify as fair competition because ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER are specifically barred from such conduct by the Termination Agreement.

133.   As a direct and proximate result of these misrepresentations, Plaintiffs have been damaged in the amount of lost profits and unpaid commissions.

134.   This conduct was malicious, oppressive and despicable, in conscious disregard of Plaintiffs' rights, and stems from improper and evil motives, including their desire to siphon business from Plaintiffs, and to profit from Plaintiffs' industry and hard work.   Punitive and exemplary damages are therefore warranted.   To the extent these acts were committed by employees, APS and ICA had advance knowledge of the unfitness of the employees, they employed them with a conscious disregard of Plaintiffs' rights, and they authorized or ratified the employees' conduct. Such knowledge, conscious disregard, authorization or ratification was by officers, directors, and/or managing agents of APS and ICA.

## THIRTEENTH CAUSE OF ACTION

### Trade Libel

### (Against ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER)

135.   Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 134 of this Complaint.

136.   ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER made disparaging statements about Plaintiffs to the heads of certain government agencies. These statements falsely claimed that the VEBS Program contained inaccurate information and they made personal attacks against LIZALDE's character, thus damaging Plaintiffs' reputation.

137.   These statements played a material and substantial part in inducing the government agencies to do business with ICA and APS, rather than Plaintiffs.   ICA,

31

APS, RODMAN, J. ROEDIGER and L. ROEDIGER made these statements maliciously, with the specific intent of siphoning Plaintiffs' business.

138. As an actual and proximate cause of these disparaging statements, Plaintiffs lost prospective contracts with these government agencies and their employees. Plaintiffs' damages are equivalent to the profits made by ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER.

139. This conduct was malicious, oppressive and despicable, in conscious disregard of Plaintiffs' rights, and stems from improper and evil motives, including their desire to siphon business from Plaintiffs, and to profit from Plaintiffs' industry and hard work. Punitive and exemplary damages are therefore warranted. To the extent these acts were committed by employees, APS and ICA had advance knowledge of the unfitness of the employees, they employed them with a conscious disregard of Plaintiffs' rights, and they authorized or ratified the employees' conduct. Such knowledge, conscious disregard, authorization or ratification was by officers, directors, and/or managing agents of APS and ICA.

## FOURTEENTH CAUSE OF ACTION

### Breach of Confidence

### (Against ICA, APS, RODMAN and ROEDIGER)

140. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 139 of this Complaint.

141. The VEBS Program is a novel idea because it constitutes a confidential marketing and promotion method for life insurance, annuities, and long term care, which is targeted and tailored to specific audiences.

142. Through the execution of the Marketing Agreement and the Termination Agreement, both of which contain confidentiality clauses, Plaintiffs and ICA entered into a confidential relationship. APS, RODMAN, J. ROEDIGER and L. ROEDIGER are parties to this confidential relationship through the alter ego doctrine. ICA, APS,

32

1  RODMAN, J. ROEDIGER and L. ROEDIGER had an opportunity to decline access
2  to the confidential VEBS Program materials.

3  143.  ICA, APS, RODMAN, J. ROEDIGER and L. ROEDIGER breached
4  Plaintiffs' confidence by disclosing the contents of the VEBS Program to
5  unauthorized third parties, by creating derivative works and by using the VEBS
6  Program materials after the effective date of the Termination Agreement.

7  144.  As a direct and proximate result of these misrepresentations, Plaintiffs
8  have been damaged in the amount of lost profits and unpaid commissions.

9  145.  This conduct was malicious, oppressive and despicable, in conscious
10  disregard of Plaintiffs' rights, and stems from improper and evil motives, including
11  their desire to siphon business from Plaintiffs, and to profit from Plaintiffs' industry
12  and hard work.  Punitive and exemplary damages are therefore warranted.  To the
13  extent these acts were committed by employees, APS and ICA had advance
14  knowledge of the unfitness of the employees, they employed them with a conscious
15  disregard of Plaintiffs' rights, and they authorized or ratified the employees' conduct.
16  Such knowledge, conscious disregard, authorization or ratification was by officers,
17  directors, and/or managing agents of APS and ICA.

## FIFTEENTH CAUSE OF ACTION

### Violation of Business & Professions Code § 17200

### (Against ICA, APS, the AGENTS and OZUNA)

21  146.  Plaintiffs repeat, re-allege and incorporate by reference each and every
22  allegation contained in paragraphs 1 through 145 of this Complaint.

23  147.  ICA, APS, the AGENTS and OZUNA have infringed upon Plaintiffs'
24  copyrights and trade secrets, and this constitutes unlawful business practices under
25  Business & Professions Code § 17200.  ICA, APS and the AGENTS have further
26  committed fraud and constructive fraud, interference with prospective economic
27  advantage, trade libel and breach of confidence as to Plaintiffs, and this constitutes
28  unfair and fraudulent business practices under Business & Professions Code § 17200

33

1  because the utility of Defendants' conduct is greatly outweighed by the gravity of

2  harm to Plaintiffs.

3  148. Defendants' business acts and practices are unfair and impair fair and

4  honest competition and otherwise significantly harm competition in the market for

5  Plaintiffs' services.

6  149. Plaintiffs are entitled to recover the damages sustained and will sustain as

7  a result of Defendants' wrongful conduct as alleged herein in an amount to be proven

8  at time of trial. Defendants should also be required to disgorge their ill-gotten gains.

9  150. Defendants will continue to use Plaintiffs' proprietary information and

10 derivatives of the same unless enjoined by this Court. By reason of the alleged acts

11 and conduct of Defendants, Plaintiffs have suffered and will imminently suffer further

12 harm, including the loss of confidential and proprietary information and competitive

13 position, the amount of which will be difficult to ascertain. Plaintiffs will be without

14 an adequate remedy at law.

15 151. Plaintiffs are entitled to an injunction restraining Defendants, their

16 officers, agents and employees, and all persons acting in concert with them, from

17 engaging in any further such acts of infringement in violation of the California

18 Business & Professions Code.

19 ## SIXTEENTH CAUSE OF ACTION

20 ### Conversion

21 ### (Against All Defendants)

22 152. Plaintiffs repeat, re-allege and incorporate by reference each and every

23 allegation contained in paragraphs 1 through 151 of this Complaint.

24 153. Defendants have wrongfully converted Plaintiffs' proprietary and

25 confidential information, as well as commissions owed to Plaintiffs. Defendants'

26 conduct is willful and malicious and with the intention or knowledge of the harm that

27 Plaintiffs would suffer.

28 ///

34

154. As a result of the conversion of Defendants of the aforementioned valuable property, Plaintiffs will be injured, damaged, and irreparably harmed. Because of the nature of the property converted, Plaintiffs have no adequate remedy at law and will continue to suffer a loss of sales, loss of business reputation and goodwill, and other irreparable harm unless the Court orders Defendants, as well as their employees, agents and all persons acting in concert with them, to refrain from using, copying, publishing, disclosing, transferring or selling Plaintiffs' confidential and proprietary information, or any product that is based on or incorporates part or all of the Plaintiffs' confidential and proprietary information, and from obtaining any commercial advantage or unjust enrichment from the unlawful attainment, possession, and use of Plaintiffs' confidential information.

155. This conduct was malicious, oppressive and despicable, in conscious disregard of Plaintiffs' rights, and stems from improper and evil motives, including their desire to siphon business from Plaintiffs, and to profit from Plaintiffs' industry and hard work. Punitive and exemplary damages are therefore warranted. To the extent these acts were committed by employees, APS and ICA had advance knowledge of the unfitness of the employees, they employed them with a conscious disregard of Plaintiffs' rights, and they authorized or ratified the employees' conduct. Such knowledge, conscious disregard, authorization or ratification was by officers, directors, and/or managing agents of APS and ICA.

156. Plaintiffs are further entitled to an order requiring Defendants to return all of Plaintiffs' confidential information.

## SEVENTEENTH CAUSE OF ACTION

### Palming Off

### (Against ICA, APS and AGENTS)

157. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 156 of this Complaint.

///

PLAINTIFFS' COMPLAINT

158.   ICA, APS and CHALMERS created a website which purported to be a VEBS website.  ICA, APS and the AGENTS also created business cards, letterhead and email footers, all of which featured the VEBS name and logo.  At the workshops the AGENTS also represented themselves to the federal employees as being affiliated or associated with VEBS.  ICA, APS and the AGENTS therefore simulated and imitated Plaintiffs.

159.   ICA, APS and the AGENTS acted with the intention of deceiving the unwary federal agencies and their employees, who actually sought to engage Plaintiffs' services.

160.   As of June 4, 2009, ICA, APS and the AGENTS were competitors of Plaintiffs because they work in the same industry and provide the same service.

161.   As a direct and proximate result of these misrepresentations, Plaintiffs have been damaged in the amount of lost profits.

162.   This conduct was malicious, oppressive and despicable, in conscious disregard of Plaintiffs' rights, and stems from improper and evil motives, including their desire to siphon business from Plaintiffs, and to profit from Plaintiffs' industry and hard work.  Punitive and exemplary damages are therefore warranted.  To the extent these acts were committed by employees, APS and ICA had advance knowledge of the unfitness of the employees, they employed them with a conscious disregard of Plaintiffs' rights, and they authorized or ratified the employees' conduct.  Such knowledge, conscious disregard, authorization or ratification was by officers, directors, and/or managing agents of APS and ICA.

## EIGHTEENTH CAUSE OF ACTION

### Accounting

### (Against ICA and APS)

163.   Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 162 of this Complaint.

///

36

164.  In the Termination Agreement ICA promised to fully and completely account to Plaintiffs for all business generated and profits made under the Marketing Agreement.  While it was not a party to the Marketing Agreement, APS likewise generated business and profits through its use of the VEBS Program materials, and APS consented to the accounting obligation.

165.  ICA and APS have only provided a partial accounting for business generated through one insurance carrier.  ICA and APS only provided a partial accounting for one annuity carrier, and this was only after LIZALDE learned independently about such activity.  ICA and APS have failed to account for business generated through any other carriers or annuities, or for sales of any long term care.

166.  ICA and APS further failed to account for their marketing activities which prevent Plaintiffs from ascertaining the extent of the copyright infringement and palming off.

167.  Plaintiffs therefore demand that ICA and APS fully account for all and business generated and profits made under the Marketing Agreement, as this is the only way Plaintiffs can calculate the commissions owed.  Plaintiffs further demand that ICA and APS fully account for their marketing activities under the Marketing Agreement, and for all marketing done purportedly on behalf of VEBS.

## NINETEENTH CAUSE OF ACTION

### Racketeer Influenced and Corrupt Organizations Act - 18 U.S.C. § 1961

### (Against All Defendants Except OZUNA)

168.  Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 167 of this Complaint.

169.  All Defendants are engaged in a common enterprise of marketing retirement and insurance products to federal agencies and their employees.  This enterprise includes Defendants holding themselves out to the federal agencies as VEBS so as to obtain access to the federal employees, then utilizing the confidential,

37

copyrighted and proprietary VEBS Program materials, and/or derivative works therefrom, to market retirement and insurance products to the employees.

170. The enterprise consists of multiple business entities, including ICA and APS, and some AGENTS are working as limited liability companies while others are working as sole proprietors.

171. The enterprise has a common purpose, continuity of structure and personnel, and an ascertainable structure distinct from that inherent in the racketeering conduct, as sales of retirement and insurance products is legitimate business activity.

172. Defendants have engaged in a pattern of racketeering activity. The pattern is present through their dealings with Plaintiffs because they were siphoning business by committing fraud, palming off and copyright violations before, during and after the Marketing Agreement and Termination Agreement, for a duration of longer than one year. Before the Termination Agreement, Defendants moved on to a VEBS competitor and engaged in a substantially similar or identical scheme, which continued until December 2009. Defendants are now replicating the same scheme through OZUNA.

173. Defendants have engaged in the following acts of racketeering, including but not limited to:

> A. Mail fraud under 18 U.S.C. § 1341;
>
> B. Wire fraud under 18 U.S.C. § 1343;
>
> C. Interstate transportation of stolen property under 18 U.S.C. § 2315;
>
> D. Willful copyright infringement for private financial gain under 18 U.S.C. § 2319; and
>
> E. Trafficking in goods and services bearing counterfeit marks under 18 U.S.C. § 2320.

174. As a proximate result of Defendants' enterprise and pattern of racketeering activity, Plaintiffs have been damaged in an amount to be proven at time of trial, including treble damages.

## TWENTIETH CAUSE OF ACTION

### Civil Conspiracy – California Common Law

### (Against All Defendants Except OZUNA)

175.   Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 174 of this Complaint.

176.   All Defendants conspired with each other with the intent to violate federal and state unfair competition laws and common law prohibitions against the misappropriation of Plaintiffs' name, reputation and copyrighted materials, such that all Defendants held themselves out to the federal agencies and employees as VEBS or as affiliated with VEBS.  All Defendants also conspired to create derivative works of the VEBS Program.

177.   Defendants knowingly joined and conspired with each other, and with others yet to be named, to commit violations of the federal and state unfair competition laws and common law prohibition against the misappropriation of trade secrets, conversion, fraud, interference with prospective advantage and economic relationships as alleged herein to the detriment of Plaintiffs.

178.   Each of the actions alleged herein on the part of Defendants was an overt act undertaken in the furtherance of a conspiracy, and each Defendant was a direct, necessary and substantial participant in the course of conduct.

179.   Defendants had access to confidential trade secrets and proprietary information as a result of the Marketing Agreement.  Plaintiffs would not have allowed access to the VEBS Program, but for Defendants agreeing to the terms of the Marketing Agreement and Confidentiality Agreements.  Pursuant to the Marketing Agreement and Termination Agreement, Defendants knew that the information obtained was a trade secret and proprietary business information and Defendants had the duty to keep all such information confidential and to return all such information upon the effective date set forth in the Termination Agreement to Plaintiffs.

///

39

180.   As a proximate result of Defendants' wrongful conduct, Plaintiffs have suffered damages and are entitled to an amount to be proven at trial.

181.   This conduct was malicious, oppressive and despicable, in conscious disregard of Plaintiffs' rights, and stems from improper and evil motives, including their desire to siphon business from Plaintiffs, and to profit from Plaintiffs' industry and hard work.   Punitive and exemplary damages are therefore warranted.   To the extent these acts were committed by employees, APS and ICA had advance knowledge of the unfitness of the employees, they employed them with a conscious disregard of Plaintiffs' rights, and they authorized or ratified the employees' conduct.   Such knowledge, conscious disregard, authorization or ratification was by officers, directors, and/or managing agents of APS and ICA.

## TWENTY-FIRST CAUSE OF ACTION

### (Declaratory Relief - 28 U.S.C. §§ 2201; 2202)

### (Against All Defendants)

182.   Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 181 of this Complaint.

183.   An actual controversy now exists between Plaintiffs and Defendants concerning:

    a.   The ownership and use of the VEBS Program materials;

    b.   The scope and validity of the VEBS copyrighted material and Defendants' use of such material as its own, including the creation of derivative works;

    c.   VEBS' ability to effectively conduct business, use its copyrighted material, provide presentations to federal employees without actual confusion in the marketplace until a judicial determination of the dispute over ownership of the VEBS Program.

184.   Plaintiffs seek a declaration that:

///

A. Defendants unlawfully appropriated the trade secrets relating to Plaintiffs' business, and Defendants must immediately return and cease using the VEBS Program materials;

B. Requiring Defendants to advise federal agencies and employees with whom they have dealt that Plaintiffs are the creator, originator and owner of the VEBS Program materials;

C. Requiring Defendants to divulge the identities of the federal agencies and employees, independent agents, any anybody else with whom they shared the VEBS Program materials;

D. Requiring Defendants to hold in trust during the pendency of this action and transfer to Plaintiffs upon prior order of the Court, or at the termination of this litigation, all materials relating to the VEBS Program.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For compensatory damages according to proof;

2. For a temporary, preliminary and permanent restraining order, enjoining Defendants from using and disclosing the VEBS Program materials and derivatives thereof, and from conducting any business with federal agencies and their employees;

3. For an accounting of all profits made pursuant to the VEBS Program, before, during and after the Marketing Agreement and Termination Agreement;

4. For statutory damages of fifty-thousand dollars ($50,000) for each infringement of VEBS' copyrights on the VEBS Program material and for statutory damages of one-hundred fifty-thousand dollars ($150,000) for each willful infringement;

5. That Defendants be required to surrender during the pendency of this action all material copied from VEBS' in their possession or under their

41

control, and to surrender for destruction all infringing copies of these works including all electronically stored material, and printed materials; and external hard drives (including memory sticks);

6. For attorneys' fees and costs;

7. For an order requiring Defendants to advise relevant federal agencies and their employees that VEBS is the originator and owner of the VEBS Program;

8. For an accounting regarding the identity of the federal agencies and independent agents with whom Defendants disclosed the VEBS Program materials;

9. For full restitution and disgorgement of any ill gotten gains and proceeds from sales to related to the use of the VEBS Program and any derivative works;

10. The greater of actual, compensatory and consequential damages, or the value of the Defendants' unjust enrichment, in an amount to be determined at trial;

11. For punitive damages;

12. For treble damages;

13. Pre and post judgment interest; and

14. Such other relief in as the Court deems proper.

DATED: April 20, 2010

OLIVA & ASSOCIATES, ALC

By: _____

Joseph L. Oliva, Esq.
Thomas E. Ladegaard, Esq.
Stephen F. Yurcich, Esq.
Attorneys for Plaintiffs,
RAUL LIZALDE and VEBS. INC.

# TABLE OF EXHIBITS

| EXHIBIT | PAGE(S) |
|---------|---------|
| A | 43-49 |
| B | 50-51 |
| C | 52-56 |
| D | 57-62 |

**EXHIBIT A**

# EXHIBIT A

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

**TX 7-022-532**

**Effective date of registration:**

February 5, 2009

---

## Title

**Title of Work:** Civil Service Benefits FERS/CSRS

## Completion/ Publication

**Year of Completion:** 2008

**Date of 1st Publication:** August 29, 2008     **Nation of 1st Publication:** United States

## Author

**Author:** VEBS, Inc.

**Author Created:** text, compilation, editing

**Work made for hire:** Yes

**Citizen of:** United States     **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** VEBS, Inc.

2048 Aldergrove Ave, Suite A, Escondido, CA, 92029, United States

## Rights and Permissions

**Organization Name:** VEBS, Inc.

**Address:** 2048 Aldergrove Ave

Suite A

Escondido, CA 92029  United States

## Certification

**Name:** Douglas C. Heumann

**Date:** February 5, 2009

---

**Correspondence:** Yes

**EXHIBIT A, PAGE 43**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

## TX 7-018-244

**Effective date of
registration:**

February 5, 2009

## Title
**Title of Work:** Civil Service Benefits PowerPoint (Full Version with Notes)

## Completion/ Publication
**Year of Completion:** 2008

**Date of 1st Publication:** August 29, 2008          **Nation of 1st Publication:** United States

## Author
**Author:** VEBS, Inc

**Author Created:** text, photograph(s), compilation, editing, artwork

**Work made for hire:** Yes

**Citizen of:** United States          **Domiciled in:** United States

## Copyright claimant
**Copyright Claimant:** VEBS, Inc

2048 Aldergrove, Suite A, Escondido, CA, 92029, United States

## Rights and Permissions
**Organization Name:** VEBS, Inc.

**Address:** 2048 Aldergrove

Suite A

Escondido, CA 92010  United States

## Certification
**Name:** Douglas C. Heumann

**Date:** February 5, 2009

**EXHIBIT A, PAGE 44**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

## TX 7-022-518

**Effective date of registration:**

February 5, 2009

## Title

**Title of Work:** Civil Service Benefits CERS/FERS Short Class

## Completion/ Publication

**Year of Completion:** 2008

**Date of 1st Publication:** August 29, 2008     **Nation of 1st Publication:** United States

## Author

■     **Author:** VEBS, Inc.

**Author Created:** text, compilation, editing

**Work made for hire:** Yes

**Citizen of:** United States     **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** VEBS, Inc.

2048 Aldergrove Ave, Suite A, Escondido, CA, 92029, United States

## Rights and Permissions

**Organization Name:** VEBS, Inc.

**Address:** 2048 Aldergrove Ave

Suite A

Escondido, CA 92029  United States

## Certification

**Name:** Douglas C. Heumann

**Date:** February 5, 2009

**Correspondence:** Yes

**EXHIBIT A, PAGE 45**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

## TX 7-022-524

**Effective date of registration:**

February 5, 2009

---

## Title

**Title of Work:** Civil Service Benefits (Military)

## Completion/ Publication

**Year of Completion:** 2009

**Date of 1st Publication:** January 12, 2009    **Nation of 1st Publication:** United States

## Author

■  **Author:** VEBS, Inc.

**Author Created:** text, editing

**Work made for hire:** Yes

**Citizen of:** United States    **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** VEBS, Inc.

2048 Aldergrove Ave, Suite A, Escondido, CA, 92029, United States

## Rights and Permissions

**Organization Name:** VEBS

**Address:** 2048 Aldergrove Ave

Suite A

Escondido, CA 92029  United States

## Certification

**Name:** Douglas C. Heumann

**Date:** February 5, 2009

---

**Correspondence:** Yes

**EXHIBIT A, PAGE 46**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

## TX 7-022-508

**Effective date of registration:**

February 5, 2009

## Title

**Title of Work:** Civil Service Benefits FERS

## Completion/ Publication

**Year of Completion:** 2008

**Date of 1st Publication:** August 29, 2008     **Nation of 1st Publication:** United States

## Author

**Author:** VEBS, Inc.

**Author Created:** text, compilation, editing

**Work made for hire:** Yes

**Citizen of:** United States     **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** VEBS, Inc.

2048 Aldergrove Ave, Suite A, Escondido, CA, 92029, United States

## Rights and Permissions

**Organization Name:** VEBS, Inc

**Address:** 2048 Aldergrove

Suite A

Escondido, CA 92029  United States

## Certification

**Name:** Douglas C. Heumann

**Date:** February 5, 2009

**Correspondence:** Yes

**EXHIBIT A, PAGE 47**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

## TX 7-022-511

**Effective date of
registration:**

February 5, 2009

---

### Title

**Title of Work:** Civil Service Benefits FERS/CRS Lunch Program

### Completion/ Publication

**Year of Completion:** 2008

**Date of 1st Publication:** August 29, 2008    **Nation of 1st Publication:** United States

### Author

■ **Author:** VEBS, Inc.

**Author Created:** text, compilation, editing

**Work made for hire:** Yes

**Citizen of:** United States    **Domiciled in:** United States

### Copyright claimant

**Copyright Claimant:** VEBS, Inc.

2048 Aldergove Ave, Suite A, Escondido, CA, 92029, United States

### Rights and Permissions

**Organization Name:** VEBS, Inc.

**Address:** 2048 Aldergove Ave

Suite A

Escondido, CA 92029  United States

### Certification

**Name:** Douglas C. Heumann

**Date:** February 5, 2009

---

**Correspondence:** Yes

**EXHIBIT A, PAGE 48**

Page 1 of 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

## TX 7-022-431

**Effective date of
registration:**

February 5, 2009

## Title

**Title of Work:** Understanding Your Government Benefits

## Completion/ Publication

**Year of Completion:** 2008

**Date of 1st Publication:** August 20, 2008     **Nation of 1st Publication:** United States

## Author

**Author:** VEBS, Inc

**Author Created:** text, editing

**Work made for hire:** Yes

**Citizen of:** United States     **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** VEBS, Inc

2048 Aldergrove Ave, Suite A, Escondido, CA, 92029, United States

## Limitation of copyright claim

**Material excluded from this claim:** Previous version of presentation

**New material included in claim:** Additional and revised text, editing

## Certification

**Name:** Douglas C. Heumann

**Date:** February 5, 2009

**Correspondence:** Yes

**EXHIBIT A, PAGE 49**

# EXHIBIT B

## CONFIDENTIALITY, NONDISCLOSURE, AND
## OWNERSHIP OF INTELLECTUAL PROPERTY AGREEMENT

This Confidentiality, Nondisclosure and Ownership of Intellectual Property Agreement (this "Agreement"), dated as of_____ is made between Voluntary Employee Benefit Systems, a California company, 2048 Aldergrove Ave. #A Escondido, CA 92029 (760) 294-1326, and Independent Career Agency (ICA) (collectively referred to from time to time as "VEBS and ICA" or "Disclosing Party")and any entity that controls, is controlled by, or under common control with VEBS or ICA., and ( **Rep Name or Comp name)** (hereinafter referred to as "Receiving Party"). VEBS and ICA and Receiving Party agree to protect the confidentiality of, maintain VEBS & ICA rights in and prevent the unauthorized use and disclosure of their valuable confidential information. Accordingly, for good and valuable consideration, the receipt of which is hereby acknowledged, VEBS & ICA and Receiving Party agree as follows:

1.      **Confidential Information**

As used in this Agreement, "Confidential Information" means any material or information marked as "Confidential," "Proprietary," or any other marking or statement indicating the Confidential Information's confidential nature as well as those certain compact discs, including all enhancements, designs, improvements and ideas, and the information and material thereon developed by VEBS and ICA to obtain business referrals.

2.      **Use of Confidential Information**

Receiving Party may use Confidential Information only in pursuance of its business relationship with the Disclosing Party.  Except as expressly provided in this Agreement, the Receiving Party will not disclose Confidential Information to anyone without the Disclosing Party's prior written consent. The Receiving Party will not use and will take all reasonable measures to avoid disclosure, dissemination or unauthorized use of Confidential Information, including, at a minimum, those measures it takes to protect its own confidential information of a similar nature.

3.      **Receiving Party Personnel**

Receiving Party will restrict the possession and knowledge of the Confidential Information to its employees, independent contractors and entities controlled by it (collectively, "Personnel") who need to know Confidential Information in connection with the parties' business relationship, and have executed written agreements obligating them to protect the Confidential Information.

4.      **Ownership of Confidential Information**

All Confidential Information will remain the exclusive property of the Disclosing Party. The Disclosing Party's disclosure of Confidential Information will not constitute an express or implied grant to the Receiving Party of any rights to or under the Disclosing Party's parent, copyrights, trade secrets, trademarks of other intellectual property rights.

5.      **Return of Confidential Information**

Receiving Party will return or destroy all tangible materials embodying Confidential Information (in any form and including, without limitation, all summaries, copies and excerpts of Confidential Information) promptly following the Disclosing Party's written request. At the Disclosing Party's option, the Receiving Party will provide written certification of its compliance with this Section.

6.      **Injunctive Relief**

The Receiving Party acknowledges that disclosure or use of Confidential Information in violation of this Agreement could cause irreparable harm to the Disclosing Party for which monetary damages may be difficult to ascertain or an inadequate remedy. The Receiving Party therefore agrees that the Disclosing Party will have the right in addition to its other rights and remedies, to seek injunctive relief for any violation of this Agreement.

7.      **Scope; Termination**

This Agreement is intended to cover Confidential Information disclosed by Disclosing Party both prior and subsequent to the date hereof. This Agreement automatically will terminate upon the completion or termination of the parties' business relationship; provided, however, that Receiving Party's obligations with respect to Disclosing Party's Confidential Information will survive such termination,

8.      **Miscellaneous**

8.1      This Agreement will not create a joint venture, partnership or other formal business relationship or entity of any kind, or an obligation to form any such relationship or entity.

8.2 This Agreement constitutes the entire agreement between the parties relating to the matters discussed herein and may be amended or modified only with the mutual written consent of the parties. Receiving Party's obligations hereunder are in addition to, and not exclusive of, any and all of its other obligations and duties to Disclosing Party, whether express, implied, in fact or in law. Subject to the limitations set forth in this *Agreement, this* Agreement will inure to the benefit of and be binding upon the parties and their respective successors and assigns-

8.3 Any failure by Disclosing Party to enforce Receiving Party's strict performance of any provision of this Agreement will not constitute a waiver of its right to subsequently enforce such provision or any other provision of at Agreement.

8.4 If a provision of this Agreement is held invalid under any applicable law, such invalidity will not affect any other provision of this Agreement that can be given effect without the invalid provision. Further, all terms and conditions of this Agreement will be deemed enforceable to the fullest extent permissible under applicable law, and, when necessary. The court is requested to reform any and all terms or conditions to give them such effect.

8.5 This Agreement will be governed by laws of the State of California, without reference to its choice of law rules- Exclusive jurisdiction over and venue of any suit arising out of or relating to this Agreement will be in the state and federal courts of the County of San Diego, California- This Agreement may be executed by facsimile and in counterpart copies.

THIS AGREEMENT AFFECTS YOUR RIGHTS TO IMPROVEMENTS AND DEVELOPMENTS YOU MAKE DURING YOUR RELATIONSHIP WITH DISCLOSING PARTY, AND RESTRICTS YOUR RIGHT TO USE OR DISCLOSE DISCLOSING PARTY'S CONFIDENTIAL INFORMATION DURING OR AFTER THE TERMINATION OF YOUR RELATIONSHIP WITH DISCLOSING PARTY.

**DISCLOSING PARTY:**
VOLUNTARY EMPLOYEE BENEFIT SYSTEMS (VEBS)

By:_____          Date: _____
    Raul Lizalde, President

INDEPENDENT CAREER AGENCY (ICA)

By:_____          Date: _____
    Michael T. Rodman, President

**RECEIVING PARTY:**
**(REP Name )**

By:_____          Date: _____

Print Name:_____

**EXHIBIT B, PAGE 51**

**EXHIBIT C**

# EXHIBIT C

## AGREEMENT TO TERMINATE MARKETING AGREEMENT

THIS AGREEMENT TO TERMINATE MARKETING AGREEMENT (hereinafter referred to as "this Termination") is made between: Raul Lizalde doing business as Voluntary Employee Benefit Systems ("VEBS") whose offices are located at 2048 Aldergrove Avenue, #A, Escondido, CA 92029; and Independent Career Agency, Inc., a California Corporation ("ICA") whose offices are located at 1500 State Street, Suite 220, San Diego, CA 92101. VEBS and ICA, collectively, are occasionally referred to herein as "the Parties" or "the Parties hereto". The Effective Date of this Termination is June 4, 2009.

### RECITALS

The Parties hereto, on or about October 28, 2008, entered that certain "MARKETING AGREEMENT (With Confidentiality, Non-Disclosure and Ownership of Intellectual Property Provisions)", hereinafter referred to as "the Marketing Agreement". A copy of the Marketing Agreement is attached hereto as Exhibit A for reference. All references to ICA's "Agents", or to VEBS' "Program" or "Confidential Information" are intended to have the same meaning as ascribed to those terms in the Marketing Agreement.

Certain disputes have arisen between the Parties with respect to interpretation and performance of the terms and provisions of the Marketing Agreement, such that the Parties now elect to terminate the Marketing Agreement; and they now effectuate such election by entering and executing this Termination.

Advanced Planning Services, Inc. was not a party to the Marketing Agreement, and it is thus not a party to this Termination. Nonetheless, the Parties desire that Advanced Planning Services, Inc. acknowledge its awareness of, and its consent to this Termination, and Advanced Planning Services, Inc. is willing to do so in the interest of helping to facilitate this Termination as between the Parties.

### AGREEMENT

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties now agree as follows:

A.   The Parties agree that notwithstanding paragraph 5 of the Marketing Agreement, the Marketing Agreement is hereby deemed terminated as of the Effective Date.

B.   All business "generated through the Program", as defined in section "8-h" of the Marketing Agreement, shall be deemed to fall under the compensation provisions (section 8) of the Marketing Agreement, so long as an application for such business was first written by ICA's Agent(s) prior to the Effective Date.

C.   Prior to VEBS's execution of this Termination, ICA shall provide complete and up-to-date reports of sales that have been generated as a result of the Program, pursuant to the Marketing Agreement, so long as an application for such business was first written by ICA's Agent(s) prior to the Effective Date. These reports shall be attached to this agreement as Exhibit B.

D.   Prior to VEBS execution of this Termination, all compensation then due VEBS under the Marketing Agreement shall be paid to VEBS. In addition, VEBS shall be timely paid for all

remaining business "generated through the Program", as defined in section "8-h" of the Marketing Agreement upon receipt by ICA of such compensation from the carrier(s) or 90 days whichever occurs first. In addition, ICA shall confirm in writing if necessary to a carrier that the business generated through the program and attached to this Agreement as Exhibit B was business generated by VEBS.

E.   Any and all confidential or proprietary materials and information exchanged between the Parties shall be returned on or before October 15, 2009, or alternatively the Party having custody of such materials may destroy such physical materials and delete such electronically-stored information or data on or before said date. The Party returning (or alternatively destroying or deleting) such materials shall thereupon certify, in writing signed by an individual principal of that Party, that:

> "All confidential or proprietary materials, information and data of [the other Party] provided to [the certifying Party] pursuant to the Marketing Agreement of October 28, 2008, has been either returned, destroyed, or deleted in compliance with paragraph "E" of the AGREEMENT TO TERMINATE MARKETING AGREEMENT bearing the Effective Date of June 4, 2009."

F.   The Parties specifically agree that they shall not disclose or cause to be disclosed the provisions of this Termination to anyone, except as may be necessary for confidential accounting, tax, governmental or legal purposes, but in such event the recipient of such information (a) must be a person who owes a fiduciary duty of confidentiality to the Party who is revealing such information, and (b) must be advised that the information is confidential. If asked by any third parties about the Marketing Agreement or its apparent termination, the Parties shall simply state that Marketing Agreement was terminated upon mutual consent of the Parties, and that the terms are confidential. The reports of polices generated by VEBS during the Marketing Agreement and attached as Exhibit B shall not be deemed confidential information from the standpoint that these reports may be shared with the institutions from who these policies were generated.

G.   The Parties specifically agree that they shall not, at any time, in any way disparage the other Party or make statements that may be reasonably interpreted as derogatory or detrimental about the other Party or the other Party's principals, officers, employees, or affiliated companies with regard to any matter concerning or arising out of the Marketing Agreement or this Termination.

H.   VEBS (including its principals, affiliated entities, officers and managerial employees) expressly agrees that it shall not:

> a.   Solicit, recruit or hire any ICA Agent(s)
> b.   Initiate contact with any ICA Agent(s)
> c.   Imply, directly or indirectly to such Agents, that VEBS might be interested in recruiting or hiring them.

I.   ICA shall, within five business days following full execution of this Termination, employ its diligent efforts to notify each of its Agents involved or exposed to VEBS materials and confidential information substantially as follows:

> a.   That the Marketing Agreement between ICA and VEBS has been terminated.

b. That VEBS has terminated authorization for the Agents to use the VEBS Program or VEBS Confidential Information (including VEBS' name, trademarks, service marks, copyrights, patents and all intellectual property associateed with the Confidential Information), and that the Agents' future use of any VEBS materials or property is thus prohibited by VEBS.

c. That VEBS has agreed it shall not solicit, recruit or hire any ICA Agent(s).

d. ICA and VEBS join in urging the Agents not to contact or further communicate with VEBS.

J.   Notwithstanding paragraph "H", or any other provision of this Amendment, any disputes between individual Agents and VEBS regarding any matter, including but not limited to payment or refunds for VEBS materials, are not intended to be affected or prejudiced by this Termination.

K.   The jurisdiction over any dispute involving this Termination or the Marketing Agreement and their respective provisions shall be in the Superior Court of California, with venue County of San Diego. In addition, California law shall apply. The prevailing party in any action growing out of this Termination shall be entitled, to reasonable costs and expenses incurred therein, including reasonable attorney's fees.

L.   Except for the respective duties, rights and performances expressly set forth herein:

VEBS, for itself, and for its agents, accountants, lawyers, assigns, affiliated entities, and all other persons, firms, entities, companies, or corporations, and any other entity or individual claiming by or through it, hereby releases ICA, together with ICA's successors, assigns, affiliated entities (including but not limited to Advanced Planning Services, Inc.), employees, agents, partners, and members, from all any and all claims, rights or causes of action, known or unknown, arising from, or in any way connected with the Marketing Agreement or this Termination.

ICA, for itself, and for its agents, accountants, lawyers, assigns, affiliated entities (including but not limited to Advanced Planning Services, Inc.), and all other persons, firms, entities, companies, or corporations, and any other entity or individual claiming by or through it, hereby releases VEBS, together with VEBS's successors, assigns, affiliated entities, employees, agents, partners, and members, from all any and all claims, rights or causes of action, known or unknown, arising from, or in any way connected with the Marketing Agreement or this Termination.

Further, by affixing initials below, each Party represents and warrants that it is aware of the provisions of California Civil Code Section 1542, . and knowingly intentionally waives such rights, as well as any equivalent rights under the laws of any other jurisdiction, as those rights may concern the subject matter herein. Section 1542 of the California Civil Code provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

VEBS _____          ICA _____

Page 3 of 5
AGREEMENT TO TERMINATE MARKETING AGREEMENT

EXHIBIT C, PAGE 54

M.   Each of the Parties agrees and pledges that the confidentiality and non-disparagement provisions set forth herein shall be made known to, observed by, and complied with by that Party's agents, employees, officers, directors, members, attorneys and affiliated entities (including, in the case of ICA, its affiliated entity Advanced Planning Services, Inc.)

N.   The Parties hereby appoint the individuals identified below to serve as their respective liaisons for purposes of any and all further communications, notices, or contact pertaining to the Marketing Agreement or this Termination.  All such future contact between the Parties shall be limited to either the Parties' respective attorneys, or the following individuals:

     For ICA:  Michael Rodman and Debra Fitzpatrick

     For VEBS:  Raul Lizalde

O.   The Parties intend that this Termination shall constitute a full and complete resolution of all their rights, duties and disputes concerning the subject matter of the Marketing Agreement.  In addition the Parties agree to the following:

  a.   Each of the Parties has been represented throughout the process which has resulted in this Termination, by attorneys of their own choosing.
  b.   The Parties have consulted with their attorneys specifically with regard to the terms and provisions, and the legal effect of this Termination.
  c.   The Parties have satisfied themselves that they fully understand this Termination.
  d.   Each of the Parties  acknowledges that there has been no promise or inducement, other than those set forth in this Termination, to cause it to enter and execute this Termination.

P.   This Agreement may be executed by counterparts, such that all counterparts taken together shall constitute one fully executed document.

Q.   The Parties hereto agree to execute such further papers or documents that shall be necessary or proper in order to fulfill the terms and conditions of the Agreement.

The undersigned Parties agree to all the terms set forth above.

     Independent Career Agency, Inc.

Date:  October 29, 2009  By:_____
     MICHAEL T. RODMAN, President


     Voluntary Employee Benefit Systems

Date:  October 30, 2009  By:_____
     RAUL LIZALDE, Owner

Advanced Planning Services, Inc., though it was not a party to the Marketing Agreement nor is it a party to this Termination, nonetheless, at the request of the Parties, hereby acknowledges and consents to the provisions of the foregoing document.

Advanced Planning Services, Inc.

Date: October 29, 2009    By: _____

MICHAEL T. RODMAN, President

*Approved as to form only:*

Date: October ____, 2009    _____

Richard J. Elliott, Attorney for Independent Career Agency, Inc.

Date: October ____, 2009    _____

Douglas C. Heumann, Attorney for Voluntary Employee Benefit Systems

# EXHIBIT D

# MARKETING AGREEMENT
## (With Confidentiality, Non-Disclosure and Ownership of Intellectual Property Provisions)

THIS AGREEMENT dated as of this _2__ day of _October_____, 2008 ("Effective Date"), is made between Voluntary Employee Benefit Systems, a California company, 2048 Aldergrove Ave. #A , Escondido, CA 92029 (760) 294-1326, and Raul Lizalde, its Owner, (hereinafter referred to as "VEBS") and Independent Career Agency, Inc., a California corporation (hereinafter referred to as "ICA"), 1500 State Street, Ste 220 San Diego, CA. 92101 888-255-2966.

## RECITALS

A.      VEBS has contracted with the United States Department of Defense and other government agencies to provide workshops for federal employees for compensation ("Contract"). The Contract gives VEBS access to government employees who may need private financial and retirement planning services and products from time to time to supplement their government benefits.   The Contract authorizes VEBS to subcontract with licensed third parties to provide workshops.

B.      VEBS is the owner, author and originator of material that constitutes Confidential Information (as defined below), consisting of certain compact discs, including all enhancements, designs, improvements and ideas and other information and material developed by VEBS, relating to a program developed by VEBS to provide insurance services to federal employees and referred to by VEBS as the "Federal Employee Retirement Planning Program" (hereinafter referred to as the "Program").

C.      VEBS has copyrighted and/or patented, and has otherwise protected the Program and its contents and covenants and represents to ICA that it has the right to enter into this Marketing Agreement.

D.      APS/ ICA desires to contract with VEBS. ICA will license, and train its agents to use, the Program to generate sales and, subject to the terms of this Agreement, VEBS agrees to provide ICA and its Agents access to the Program and will allow ICA and its Agents to provide workshops under the Contract and to replicate the Program, on an exclusive basis, to government departments, agencies and facilities.  As used herein, "Agents" shall refer to agents licensed by ICA to promote the Program in accordance with this Agreement pursuant to a Producer Agreement entered into between ICA and the Agent.

E.      VEBS shall support the sales process by using Agents to provide the workshops, providing training classes to Agents, keeping all software current, providing access to all updated marketing materials and continuing to provide whatever information or materials are necessary to support the Program and the Agents.

THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      VEBS grants ICA the exclusive right and license to market the Program and to replicate the Program to government departments, agencies and facilities. VEBS shall provide ICA with its copyrighted and/or patented Confidential Information necessary for ICA, and its

selected Agents, to have appropriate training and information regarding the marketing of the "Federal Employee Retirement Plan." VEBS shall use its best diligent efforts to support ICA, which shall include, among other things, regularly contacting government departments, agencies and facilities to set up workshops to be provided by Agents in their market areas, providing regularly scheduled training classes to Agents, keeping all software current, providing access to all updated marketing materials, continuing to provide whatever information or materials are necessary to support the marketing of the Program by ICA and their Agents and to take any other commercially reasonable and diligent steps to support ICA's expansion and marketing of the Program.

2.     ICA agrees to use its commercially reasonable and diligent efforts to generate business by and through the use of the "Program" and VEBS' Confidential Information. However, VEBS recognizes that ICA's success in marketing the Program shall constitute a joint effort and that there is no guaranty that any minimum amount of business will be generated through the use of the Program and the Confidential Information.

3.     As used in this Agreement, "Confidential Information" means those certain compact discs, including all enhancements, designs, improvements and ideas, and the information and material thereon developed by VEBS which are designated by VEBS as "Confidential Information" and make up the Program, or any informational input used therein designated by VEBS as "Confidential Information," which items are listed in Schedule 1.

4.     VEBS grants ICA the right to license the Confidential Information to its Agents, subject to the condition that ICA enter into a Confidentiality Agreement with its Agents in the form of Schedule 2, attached hereto, or other form of Confidentiality Agreement which is acceptable to VEBS, which acceptance shall not be unreasonably withheld or delayed. ICA will provide VEBS with a copy of all such executed Confidentiality Agreements within 30 days of execution by the Agent.

5.     The term of this Agreement shall be for a period of three (3) years, commencing on the Effective Date. Upon completion of the initial term, this Agreement shall be renewed automatically for successive one (1) year periods unless either party, at least thirty (30) days prior to the end of the initial term or any renewal term hereunder, gives written notice to the other party that it does not desire to renew the term of this Agreement. VEBS and ICA agree to annually review its relationship and, if changes are agreed upon, the changes must be in writing and must be signed by VEBS and ICA and attached to this Agreement in order to be of legal affect.

6.     In the event that VEBS terminates this Agreement, ICA shall have the right to continue to use the Confidential Information with Agents already licensed by it and agrees to continue to pay VEBS override commissions, as referred to in paragraph 8 below. Upon termination by VEBS, ICA will produce a list of Agents licensed by it to promote the Program and covenants and agrees that upon termination of the Agreement, ICA will no longer use the Confidential Information in regard to any additional Agents and agrees to return all Confidential Information, not necessary to maintain its contractual relations with authorized Agents, to VEBS.

7.     VEBS recognizes that ICA will be introducing Agents to VEBS with respect to the approval and training of ICA Agents licensed to market the Program, that VEBS would not

2

**EXHIBIT D, PAGE 58**

e.   In the event of the death of VEBS' principal, Raul Lizalde, compensation pursuant to this paragraph shall continue to be paid to his estate (or valid legal representative therof) as long as such distributions comply with law.

f.   Payments from the government for employee workshops presented by Agents (as a VEBS subcontractor under the Program) shall be split among the Agent, ICA and VEBS as agreed between the parties prior to an Agent being subcontracted to make such presenations.  VEBS shall retain all payments from the government for employee workshops presented personally by Raul Lizalde.

g.   ICA will provide VEBS with updated Financial Institution Commission Schedules within 30 days of receipt of same.  Compensation will be paid to VEBS directly from the Financial Institutions whenever possible and from ICA if the Financial Institution is unable to do so.

h.   For purposes of this Paragraph 8, business will be generated through the Program if the applicant for the policy or annuity is a government employee who (i) attended a Program workshop or (ii) was referred to an Agent as a direct result of marketing for the Program, or (iii) completed a Federal Employment Benefits Report as part of the Program.

i.   VEBS acknowledges and agrees that any payment by ICA to VEBS hereunder shall be subject to VEBS being properly licensed to receive such payment; ICA shall not be obligated to pay any amounts otherwise due VEBS hereunder if VEBS is not properly licensed to receive such payment.

9.   VEBS and ICA agree to indemnify and hold each other harmless for any losses, claims, damages, awards, penalties or injuries incurred by any third party, which may arise as a result of the other's breach of any representations and warranties made under this Agreement for which the other party is responsible; provided however VEBS agrees not to make a claim against ICA for the acts of ICA's Agent(s) if ICA has exercised reasonable precautions and has been reasonably prudent in employing Agent(s) (i.e. after due diligence and inquiry ICA has no information which would lead a reasonable prudent business person to refuse to do business with Agent(s)).  The parties agree to cooperate with one another in the defense of such claims and, depending on the contents of a particular claim, share reasonably and equitably in the costs and attorney's fees incurred therein.  The parties also agree to cooperate with one another in investigating and defending any such claims.  This mutual indemnity shall survive the termination of this Agreement.

10.   VEBS and ICA agree not to assign, directly or indirectly, all or part of its rights or obligations under this Agreement without prior written consent of the other, which consent shall not be unreasonably withheld.  Nothing in this Agreement (including, without limitation, the grant of the exclusive right to ICA to market and license the Program) shall restrict VEBS from selling all or a portion of the Program Assets to a third party.  As used herein, the sale of the

4

17.     The term "Confidential Information" within the meaning of this Agreement shall not include information that (a) becomes generally available to the public other than as a result of a disclosure by ICA or any of its directors, officers, employees, agents, representatives, or advisers; or (b) becomes available to ICA on a non-confidential basis from a source other than from VEBS; provided, that such source is not known by ICA to be bound by a Confidentiality Agreement with, or other obligation of secrecy to, VEBS; or (c) was known by ICA prior to the disclosure thereof by VEBS or was independently developed by or for ICA without the use of Confidential Information; or (d) is, at the time of disclosure, obvious to a person with ordinary skill in the insurance or financial planning industry.

18.     In the event that ICA becomes legally compelled to disclose any Confidential Information, it shall provide VEBS with proper prior written notice of such requirement in order to provide VEBS a reasonable opportunity to seek a protective order or other appropriate remedy.

19.     ICA acknowledges that disclosure or use of VEBS Confidential Information in violation of this Agreement could cause irreparable harm to VEBS for which monetary damages may be difficult to ascertain and therefore, ICA agrees that VEBS shall have the right, in addition to its other rights and remedies at law, to seek injunctive relief for any violation of this Agreement.

20.     ICA and VEBS will carry E & O Insurance and ICA agrees that any of its Agents to whom it makes available VEBS Confidential Information shall be required to submit proof that the Agent carries E & O insurance.

21.     ICA agrees to provide VEBS monthly reports of sales that are generated as a result of the Program pursuant to this Agreement.

22.     The provisions of paragraphs 5, 6, 7, 9, 10 through 17, and 31 of this Agreement expressly survive the termination of this Agreement.

24.     This Agreement embodies the entire agreement and understanding among the parties relative to the subject matter herein, and supersedes any prior agreements and understandings relating to such subject matter.

25.     This Agreement and the rights of the parties shall be governed by and construed and enforced in accordance with the laws of the State of California.

26.     This Agreement cannot be modified or amended except by a written instrument signed by the parties.

27.     Any failure by either party to enforce strict performance of any provision of this Agreement will not constitute a waiver the right to subsequently enforce such a provision or any other provision of this Agreement.

6

**EXHIBIT D, PAGE 60**

28.     The invalidity or partial invalidity of any portion of this Agreement shall not invalidate the remainder thereof, and said remainder shall remain in full force and effect. Moreover, if one or more of the provisions contained in this Agreement shall, for any reason, be held to be excessively broad as to scope, activity, subject or otherwise, so as to be unenforceable at law, such provision or provisions shall be construed by the appropriate judicial body by limiting or reducing it or them, so as to be enforceable to the maximum extent compatible with then applicable law.

29.     Except as herein or otherwise provided to the contrary, this Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, successors, assigns and personal representatives.

30.     Notwithstanding anything to the contrary in this Agreement, VEBS understands and agrees to the following:

    a.  ICA's affiliate, Advanced Planning Services, owns an insurance wholesaling firm and is a "master general agent" with a large number of insurance carriers. This Agreement shall in no way restrict the right of Advanced Planning Services, Inc., or any of its affiliates, to market any product or programs, together with their selected outside third party experts or administrators, offered to the general public and/or members of the insurance industry by any of the insurance companies Advanced Planning Services or its affiliates are contracted with or become contracted with at any time, even if a product or program is similar (in part or in whole) to the Program or in fact competes with the Program as long as such actions are not an express breach of this Agreement.

    b.  This Agreement shall in no way restrict the right of Advanced Planning Services, Inc. or its affiliates, including, without limitation, ICA, to accept retail applications and any other business from any licensed agent who seeks to use Advanced Planning Services, Inc. or an affiliate in its capacity as a wholesaler, master general agent or broker general agency, even if these applications come from parties who may in fact be deemed to be competitors of VEBS or from Agents with respect to transactions not generated through the Program.

    c.  The Program may incorporate a strategy that is comprised of more than one transaction or element and that each transaction or element in and of itself may not be proprietary and that it is the combination of these transactions or elements as part of a unified strategy used in connection with the Program that creates the uniqueness and value of the Confidential Information and, therefore, this Agreement shall not apply to any transaction or element within the Program in and of itself, but only to the combination of the transactions or elements as a whole as applied to retirement planning for government employees who are referred through the Program.

7

**EXHIBIT D, PAGE 61**

## SCHEDULE 2

## FORM CONFIDENTIALITY AGREEMENT

See attached confidentiality agreement, titled:

*"Confidentiality, Nondisclosure, and Ownership of Intellectual Property Agreement"*

10

**EXHIBIT D, PAGE 62**

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS
RAUL LIZALDE; VEBS, INC., a California Corporation

## DEFENDANTS
ADVANCED PLANNING SERVICES, INC., a California Corporation; et al.

FILED

2010 APR 20  PM 3: 07

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
OLIVA & ASSOCIATES, ALC
11770 Bernardo Plaza Court, Suite 350
San Diego, CA 92128
T: 858-385-0491
F: 858-385-0499

ATTORNEYS (IF KNOWN)

'10 CV 0834 LAB     RBB

ORIGINAL

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
Copyright infringement, violation of Lanham Act, 15 USC section 1125 and violation of RICO, 18 USC section 1961.

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reappointment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 423 Withdrawal 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | **PERSONAL INJURY** | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| | | [ ] 362 Personal Injury - Medical Malpractice | [X] 820 Copyrights | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 365 Personal Injury - Product Liability | [ ] 830 Patent | [ ] 810 Selective Service |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 840 Trademark | [ ] 850 Securities/Commodities/Exchange |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** | **SOCIAL SECURITY** | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 370 Other Fraud | [ ] 861 HIA (1395ff) | [ ] 891 Agricultural Acts |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 371 Truth in Lending | [ ] 862 Black Lung (923) | [ ] 892 Economic Stabilization Act |
| [ ] 195 Contract Product Liability | | [ ] 380 Other Personal Property Damage | [ ] 863 DIWC/DIWW (405(g)) | [ ] 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | [ ] 385 Property Damage Product Liability | [ ] 864 SSID Title XVI | [ ] 894 Energy Allocation Act |
| | | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | **PRISONER PETITIONS** | **FEDERAL TAX SUITS** | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 220 Foreclosure | [ ] 442 Employment | [ ] 510 Motion to Vacate Sentence | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | **HABEAS CORPUS:** | | |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 530 General | [ ] 871 IRS - Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 535 Death Penalty | | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [ ] 540 Mandamus & Other | | |
| | | [ ] 550 Civil Rights | | |
| | | [ ] 555 Prison Conditions | | |

**LABOR**
[ ] 710 Fair Labor Standards Act
[ ] 720 Labor/Mgmt. Relations
[ ] 730 Labor/Mgmt. Reporting & Disclosure Act
[ ] 740 Railway Labor Act
[ ] 790 Other Labor Litigation
[ ] 791 Empl. Ret. Inc. Security Act

**FORFEITURE/PENALTY**
[ ] 630 Liquor Laws
[ ] 640 R.R. & Truck
[ ] 650 Airline Regs.
[ ] 660 Occupational Safety/Health
[ ] 690 Other

## VI. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removal from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] YES   [ ] NO

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____   Docket Number _____

DATE  4/20/10

SIGNATURE OF ATTORNEY OF RECORD  Joseph O'Cola

ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

CR 126415  $350  # 04-20-10

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS012645
Cashier ID: mbain
Transaction Date: 04/20/2010
Payer Name: OLIVA AND ASSOCIATES
-----------------------------------
CIVIL FILING FEE
  For: LIZALDE V ADVANCED PLANNING
  Case/Party: D-CAS-3-10-CV-000834-001
  Amount:          $350.00
-----------------------------------
CHECK
  Check/Money Order Num: 11029
  Amt Tendered:  $350.00
-----------------------------------
Total Due:        $350.00
Total Tendered: $350.00
Change Amt:       $0.00


There will be a fee of $45.00
charged for any returned check.
```