1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11   RAUL LIZALDE; et al.,                              CASE NO. 10cv0834-LAB (RBB)

12                              Plaintiffs,    **ORDER ON MOTIONS TO
                                               DISMISS OR FOR A MORE**
13        vs.                                  **DEFINITE STATEMENT**

14                                             [Docket numbers 4, 26, 28, 29, 30,
     ADVANCED PLANNING SERVICES,               31, 32, 58, 61.]
15   INC., a California corporation; et al.,

16                              Defendants.

17

18        Plaintiff filed his original complaint on April 20, 2010, identifying 21 causes of action

19   including claims under the Copyright Act, Lanham Act, and RICO, as well as various

20   California statutes and theories.  The caption named sixteen different Defendants.

21        Defendant Robert Padilla then on May 17 moved to dismiss or, alternatively, for a

22   more definite statement.  (Docket no. 4.)  Defendant Charles Dzama joined in this motion.

23   (Docket no. 21.)   This was followed by a motion to dismiss for lack of jurisdiction, or

24   alternatively for a more definite statement, filed by Defendants Larry Chalmers and Premier

25   Financial Solutions, LLC.  (Docket no. 26.) Defendant Gus Gonzalez then moved to dismiss

26   for lack of jurisdiction and for improper venue.  (Docket no. 28.)  Defendant Marilyn Miller

27   filed a motion seeking the same relief, (Docket no. 29), as did Defendant Miriam Feldman

28   (Docket no. 30), and Stan Friedman.  (Docket no. 31.)  Advanced Planning Services, Inc.

1  ("APS"), Independent Career Agency, Inc. ("ICA"), Michael Rodman, Jeff Roediger, and Lori

2  Roediger then moved to dismiss the complaint on the basis of alleged agreements

3  concerning arbitration, jurisdiction, and venue.  (Docket no. 32.)  Defendants APS, Feldman,

4  Friedman, Gonzalez, ICA, Miller, Rodman, and the Roedigers then filed a notice of joinder

5  in Padilla's motion.  (Docket no. 33.)  Beth and Larry Chalmers and the Chalmers Insurance

6  Agency (newly named as a Defendant in the FAC) then joined Padilla's motion.  (Docket no.

7  56.)[1]

8       Then on July 16, 2010, with the Court's leave, Lizalde filed a first amended complaint

9  ("FAC").  The FAC also contains 21 separate claims, including three under federal law, a

10  RICO conspiracy claim, a copyright infringement claim, and a Lanham Act claim.  The

11  remainder are either state law claims or are more properly characterized as remedies (*i.e.*,

12  injunctive relief, rescission, accounting, and declaratory relief).  In view of the herculean

13  effort that had gone into briefing, however, the Court gave Defendants the option of having

14  their motions construed as motions to dismiss the FAC.  The Defendants requested this.

15       After that, Lizalde moved for a temporary restraining order (Docket no. 61), dismissed

16  claims against Defendant Ozuna, Micah Keel, and the Keel Financial Group, and notified the

17  Court of the declaration of bankruptcy by Larry and Beth Chalmers.  The Court stayed this

18  case as to the Chalmers and denied as unripe Beth Chalmers' motion to dismiss.

19  **I.    Allegations**

20       The following represents a summary of allegations in the 72-page FAC.  Lizalde is

21  president of VEBS, Inc., a company that provides financial counseling to federal employees.

22  Lizalde and VEBS developed a retirement counseling program incorporating copyrighted

23  materials.  They allege most of the Defendants were trained on how to present the program

24  and given access to the copyrighted materials; and were required to keep trade secrets

25  confidential and use the copyrighted materials only as authorized.  Plaintiffs allege

26  _____

27       [1] The Chalmers, Chalmers Insurance, and Angela Parrish filed a motion for leave to

28  join, but should merely have filed a notice of joinder.  The motion (Docket no. 58) will be
     construed as a joinder, instead of as a motion.  While the case against the Chalmers is
     stayed, Chalmers Insurance can still maintain the motion.

Defendants violated their agreements and infringed VEBS' copyrights and trademarks, in the process committing various state torts such as fraud, unfair competition, and misappropriation.

## II.    Threshold Matters

Before proceeding to other challenges, the Court first addresses the question of jurisdiction. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998) (refusing to endorse federal courts' practice of reaching merits without first confirming jurisdiction). Both personal and subject matter jurisdiction are threshold matters, and the Court may decide either first. *Sinochem Int'l Co. Ltd. v. Malaysia Intern. Shipping Corp*., 549 U.S. 422,  433 (2007).  Venue questions are also threshold matters, and the Court may decide them before resolving jurisdictional issues. *Id*. at 431.  Plaintiffs bear the burden of demonstrating proper venue and personal jurisdiction over each Defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800, 802 (9th Cir. 2004) (requiring plaintiff to show defendant directed activities toward the forum, and that the claim arises from forum-related activities); *Koresko v. Realnetworks, Inc*., 291 F. Supp. 2d 1157, 1160 (E.D.Cal. 2003) (venue).

Because personal jurisdiction and venue are intertwined here, the Court first reviews both jurisdictional and venue arguments raised in each of the motions.

### A.    Gonzalez Motion (Docket no. 28)

Gonzalez appeared specially, challenging both venue and personal jurisdiction, but addresses them both together.  In fact, the question boils down to venue, because if venue is proper, Gonzalez is also amenable to personal jurisdiction as he himself points out. *See Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on other grounds by Feltner v. Columbia Pictures Television, Inc.* 523 U.S. 340 (1998) (under 28 U.S.C. § 1400(a), venue in copyright infringement actions is proper "in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state").

Gonzalez argues he is an Idaho resident and never conducted business in, or tried to conduct business in this District.  There is no real argument he is subject to general

jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985) (distinguishing specific and general personal jurisdiction). For his part, Lizalde alleges various contacts, including allegedly infringing conduct that occurred within this district, and, notably, a agreement consenting to personal jurisdiction in California and venue in this District. Gonzalez admits he attended a one-day training course in this district, and Lizalde now alleges obtained materials at that training which Gonzalez later infringed.

These contacts are not alleged in the FAC. While the FAC is not required to include allegations showing proper venue, *see* 15 Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction and Related Matters § 3826, Plaintiffs at the same time can't show venue is proper on the basis of claims they haven't brought or haven't sufficiently identified. The FAC broadly says many of the acts giving rise to claims occurred in this district, but it doesn't say which Plaintiffs did anything in this District. The FAC alleges some Defendants reside in this district, which would make venue and personal jurisdiction proper at least as to them. And while it generally alleges the existence of a conspiracy, the very generalized allegations aren't sufficient to show what Gonzalez did, or that Gonzalez aimed his activities toward this District. In short, the FAC's generalized allegations aren't sufficient to show that venue is proper or that the Court can exercise personal jurisdiction over Gonzalez.

### 1.    Waiver by Agreement

Unlike subject matter jurisdiction, both venue and personal jurisdiction can be waived. *Leroy v. Greta Western United Corp.*, 443 U.S. 173, 180 (1979). Plaintiffs support their argument with a copy of Gonzalez's confidentiality agreement. (Lizalde Decl. (Docket no. 44), Ex. B.) The agreement deals with confidentiality, nondisclosure, and ownership of intellectual property, which forms the basis for many of the FAC's claims. Section 8.5 of that agreement provides "Exclusive jurisdiction over and venue of any suit arising out of or relating to this Agreement will be in the state and federal courts of the County of San Diego, California." If Plaintiffs can show this agreement is applicable, venue would be proper as to claims against Gonzalez, and the Court could also exercise personal jurisdiction over him. / / /

Gonzalez argues the agreement is inapplicable here, because none of the Plaintiffs was a party to them.  Specifically, he points out the parties are himself, ICA, and "VEBS, a California company" — not VEBS, Inc., the Plaintiff here.  Gonzalez also argues the agreement was signed before VEBS, Inc. even came into being.  The issue of VEBS, Inc.'s succession to the agreement was not briefed.

The agreement, if applicable, would be sufficient to show Gonzalez consented to both venue in this District and personal jurisdiction in California.  Some of the infringement allegedly occurred in this District, and the harm resulting from Gonzalez's alleged wrongdoing would be felt here, where VEBS has its headquarters.  The forum selection clause would therefore be enforceable.  *See Burger King*, 471 U.S. at 479–80 (enforcing forum selection clause, where defendant had few actual contacts with forum state, other than entering into business agreement and business relationship with defendant); *see also id.* at 472–73 and n.14 (discussing due process and "fair warning" requirements). If Plaintiffs can show VEBS, Inc. is a successor to this agreement, however, Gonzalez will have waived venue and personal jurisdiction objections.

## 2.    Copyright and Trademark Infringement

VEBS, Inc. the copyright holder, has its headquarters in this District.  Plaintiffs have alleged these Defendants attended training seminars in this District, where they obtained copyright-protected materials.  They allege these Defendants later willfully infringed the copyrights (*see* FAC, ¶¶ 64–69), as well as VEBS' trademark.  Regardless of where the infringing acts were committed, acts infringing VEBS' copyright or protected marks are enough to create specific personal jurisdiction and make venue proper in this District. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128–29 (2010).  Gonzalez, Miller, Feldman, and Friedman admit they attended the training seminars.  If the FAC has alleged one or more intentional acts they took to infringe its rights, both jurisdiction and venue would be established, because Defendants knew VEBS was located in this District and therefore would be deemed to have aimed their conduct here.  *See id.*(discussing "intentional act" and "aiming" requirements).

The Court has analyzed the Lanham Act claim in section III.A and the copyright claim in section III.C below, however, and finds they are not adequately pleaded.  For these reasons, the Court finds Plaintiffs have not shown that venue is proper or the Court can exercise personal jurisdiction over Gonzalez.  It may be that Plaintiffs can amend the FAC again to show this, however, so claims against Gonzalez will be dismissed without prejudice.

**B.    Miller Motion (Docket No. 29)**

Defendant Marilyn Miller, a Washington resident, brings a similar motion.  She admits she attended two three-day training sessions in this District in 2009 and 2010.  Lizalde, in opposition, argues as he did with Gonzalez, that during those visits she obtained copyright-protected materials and later infringed the copyright.  He also points to the confidentiality agreement as consenting to venue and jurisdiction.

As with Gonzalez, the FAC makes only very generalized allegations about what Miller did.  The analysis of this motion is therefore the same.  Claims against Miller will be dismissed without prejudice and with leave to amend, because of improper venue and lack of personal jurisdiction.

**C.    Feldman and Friedman Motions (Docket Nos. 30 and 31)**

Friedman and Feldman are husband and wife.  Feldman, a Florida resident, brings a similar motion, supported by a declaration.  The motion and declaration state Feldman has few business connections with California, and even fewer with this District.  She did accompany her husband to a job interview with Lizalde in this District, and attended several training seminars in this District concerning VEBS' business.

Friedman attended other business-related events in this District, but argues none were related to Lizalde or VEBS.  He says he did not attend the training seminar where VEBS' materials were used, because he was attending an unrelated Best Practices seminar. Instead, he says, his wife attended in his place.  These motions are subject to the same analysis as the previous two, with the same result.

/ / /

/ / /

1

**D.     Premier Financial Solutions Motion (Docket No. 26)**

2     As noted, this motion was brought both by Larry Chalmers and Premier Financial

3   Solutions, LLC.  Litigation of claims against Larry Chalmers is stayed, so to the extent the

4   motion seeks dismissal of claims against him, it is unripe.

5     Although the motion was brought by both Mr. Chalmers and Premier, the arguments

6   are directed almost entirely at Mr. Chalmers' contacts with the forum.  The reason,

7   apparently, is that Plaintiffs attempted to gain personal jurisdiction over him through Premier.

8   The parties apparently agree he was acting on behalf of Premier when he attended training

9   seminars and other meetings in this District.  The FAC alleges Mr. Chalmers and others,

10  while acting for Premier, unauthorizedly copied and used VEBS' copyrighted material.  The

11  analysis concerning personal jurisdiction over Premier is therefore the same as for the

12  previously discussed Defendants.

13

**E.     Motion re: Improper Venue, or Arbitration (Docket No. 32)**

14    Defendants ICA, APS, Jeff and Lori Roediger, and Rodman have moved to dismiss

15  the claims against them because of a binding arbitration in their Marketing Agreement of

16  October 28, 2008 with Plaintiffs, or alternatively because of venue provisions in the

17  Termination Agreement that later terminated the Marketing Agreement.

18    The Marketing Agreement, signed by Lizalde on behalf of VEBS and by Rodman on

19  behalf of ICA, broadly provides:

20      Any dispute arising out of or related to this Agreement shall be submitted to
        binding arbitration before a single arbitrator in San Diego County, California,
21      in accordance with the Commercial Arbitration Rules of the American
        Arbitration Association.

22

23  (Pls.' Notice of Errata (Docket No. 5), ¶ 31.)  This provision also allows parties to petition any

24  federal or state court in San Diego County for enforcement of the arbitration provision, if the

25  other party refuses to submit a dispute to arbitration.  These Defendants argue Jeff and Lori

26  Roediger and Michael Rodman can enforce these agreements, because Plaintiffs have

27  alleged that ICA was their alter ego.

28  / / /

Alternatively, these Defendants point to paragraph K of the Termination Agreement (FAC, Ex. D), which provides for jurisdiction over any dispute involving the Termination or Marketing Agreement to be vested in the Superior Court of California for the County of San Diego.

Plaintiffs raise three main arguments in opposition: First, these Defendants' failure to advocate for either agreement renders the motion fatally ambiguous.  Second, both agreements were fraudulently induced, and are therefore unenforceable.  And third, dismissal of some claims would require parallel litigation, which is impractical.

While these Defendants argue dismissal is required regardless of which agreement is enforced, in fact it would appear enforcement of the earlier Marketing Agreement would require arbitration.  But the failure to recognize this makes little difference, because as Plaintiffs acknowledge, the Termination Agreement purports to supersede the Marketing Agreement.  The Court therefore would first examine the Termination Agreement to determine whether it is enforceable.  Only if the Termination Agreement is found unenforceable might the Marketing Agreement be enforceable.

Plaintiffs next argue the Termination Agreement is void, either because Plaintiffs were fraudulently induced into entering into it, or because of failure of consideration (because the Defendants never intended to keep their promises).  Failure of consideration is not the proper theory, however, because some consideration was exchanged, even apart from the promises Plaintiffs now allege these Defendants never intended to keep.  Plaintiffs have cited no authority for their position.

Forum selection clauses such as the one in the Termination agreement enjoy a strong presumption of enforceability. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004).  "For a party to escape a forum selection clause on the grounds of fraud, it must show that 'the *inclusion of that clause in the contract* was the product of fraud or coercion.'" *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (en banc) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)) (emphasis in original). / / /

1     While as an unpublished case it has no precedential value, the Court also finds the

2   reasoning set forth in *SeeComm Network Servs. Corp. v. Colt Telecommunications*, 2004

3   WL 1960174 (N.D.Cal., 2004) persuasive.   There, the plaintiff argued an agreement

4   containing a forum-selection clause was invalid because of fraud in the inducement, thus

5   rendering the entire agreement including the forum-selection clause unenforceable.  But the

6   court observed that the approach the plaintiff was urging would have the effect of rendering

7   forum-selection clauses presumptively invalid whenever the validity of the entire agreement

8   was challenged.   The court could never reach the venue question until after the validity of

9   the contract as a whole had already been litigated.   *See id.* at *4.   The court therefore

10   determined the forum-selection clause would be enforced, provided it would be reasonable

11   under the circumstances to do so.  *Id.* at *4–*5.

12     Even where a forum selection clause is valid, it may not be enforceable if doing so

13   would be unreasonable.  A forum selection clause is unreasonable and unenforceable if:

14       (1) its incorporation into the contract was the result of fraud, undue
         influence, or overweening bargaining power; (2) the selected forum is so
15       gravely difficult and inconvenient that the complaining party will for all
         practical purposes be deprived of its day in court; or (3) enforcement of the
16       clause would contravene a strong public policy of the forum in which the suit
         is brought.

17

18   *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (citations and quotation

19   marks omitted).

20     While Plaintiffs have argued enforcement of the forum selection clause would be

21   unreasonable because of the inconvenience of parallel litigation, risk of unfair prejudice, and

22   risk of conflicting judgments, those arguments are based on the case's earlier posture.  As

23   discussed below, the FAC will be dismissed without prejudice.  It is unclear whether Plaintiffs

24   can successfully amend and, if so, what the amended complaint will look like.  The Court

25   therefore has no basis for determining that enforcement of the forum selection clause would

26   be unreasonable.  The motion to dismiss for improper venue will therefore be granted, but

27   without prejudice to Plaintiffs seeking reconsideration if circumstances change because of

28   successful amendment of the complaint.  The parties are likewise not precluded from

1  seeking to enforce the arbitration clause in the Marketing Agreement if the Termination
2  Agreement is shown to be unenforceable.

3  **III.   Motions to Dismiss for Failure to State a Claim**

4  Having resolved questions of jurisdiction and venue, the Court now turns to the merits.
5  Defendant Padilla moved to dismiss or, in the alternative, for a more definite statement
6  (Docket no. 4).  Defendants Dzama, APS Feldman, Friedman, Gonzalez, ICA, Miller,
7  Rodman, Jeff and Lori Roediger, Beth and Larry Chalmers, the Chalmers Insurance Agency,
8  and Parrish joined this motion.  Larry Chalmers and Chalmers Insurance also separately
9  moved to dismiss (Docket no. 26), but it merely incorporates the arguments of the Padilla
10  motion.

11  The Padilla motion focuses on the RICO and civil conspiracy claims, arguing they are
12  too vague to meet the pleading standard under Fed. R. Civ. P. 8.  To the extent Plaintiffs are
13  relying on a fraud theory, the Court applies heightened pleading standard under Fed. R. Civ.
14  P. 9(b), *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 828 (9th Cir. 2003), but otherwise applies
15  the ordinary Rule 8 standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),
16  and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).  The motion doesn't address dismissal of any
17  other claims, though it does seek dismissal of the entire FAC.

18  Evaluation of the RICO and conspiracy claims requires evaluation of some of the
19  other claims, including all the copyright, and Lanham Act claims.  Because the parties are
20  not diverse, dismissal of the three federal claims would make dismissal of the FAC
21  appropriate.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ( "[I]f the
22  federal claims are dismissed before trial the state claims should be dismissed as well.")
23  (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)) (alteration
24  omitted).

25  **A.   RICO**

26  Padilla points out the FAC cites 18 U.S.C. § 1961, rather than one of the specific
27  sections in § 1962 as required.  In response, Plaintiffs argue the claims make clear §1962(c)
28  is intended.  The elements of a § 1962(c) claim are (1) the conduct (2) of an enterprise

1   (3) through a pattern of racketeering activity.  *Salinas v. United States*, 522 U.S. 52, 62

2   (1997).  A pattern of racketeering activity means at least two acts listed under 18 U.S.C.

3   § 1961(1).  *Id*.  Among the claims based on acts listed under § 1961(1) that could meet this

4   requirement are mail fraud and wire fraud.  Plaintiffs agree these claims don't pertain to the

5   anyone but ICA, APS and the Roedigers[2] and can be stricken as to anyone else.

6          Another claim based on actions that may be listed under § 1961(1) is for interstate

7   transportation of stolen property under § 2315.  Plaintiffs argue this is supported by ¶¶  38

8   11–19, and 80 (corresponding to ¶¶ 41, 11–19, and 83, respectively, of the FAC).  But these

9   paragraphs allege nothing about property being stolen or otherwise unlawfully converted or

10  taken, and then crossing state lines.  Rather, they pertain to claims for misuse of copyright-

11  and trademark-protected materials that were legitimately obtained.

12         The two remaining claims that could be relevant are for alleged violations of 18 U.S.C.

13  § 2319 (relating to criminal infringement of a copyright) and 18 U.S.C. § 2320 (relating to

14  trafficking in goods or services bearing counterfeit marks).  Section 2319, in turn, refers to

15  17 U.S.C. § 506, which provides, among other things, that criminal copyright infringement

16  can consist of a willful infringement for commercial advantage or private financial gain.

17  § 506(a)(1)(A).  Criminal copyright infringement is therefore a viable theory upon which a

18  RICO claim might be based here.

19         Plaintiffs cannot successfully base their claim on § 2320 violations, however.  The

20  FAC does not allege the use of any trademark or service mark or other name by the

21  remaining Defendants, except a very general one in ¶ 50: "Further, without Plaintiffs'

22  knowledge or consent, ICA's agents[3] started using the VEBS logo and name, holding

23  themselves out to [customers] as VEBS employees."  But Lizalde (and, impliedly, VEBS) had

24  allowed them to use VEBS' name, and hold them out as employees or agents of VEBS.

25  _____

26  [2] Plaintiffs mentioned both Lori and Jeff Roediger, as well as "Roediger" generically.
They apparently mean Rodman.

27  [3] "Agents" or "AGENTS" is a defined term which includes these Defendants.  (*See*
28  FAC ¶ 23.)  As an undefined term, "agents" (with a lowercase "a") is a broader group, which
includes these Defendants but also includes others.  (*see id.*, ¶ 51 ("The cease and desist
letter was also sent directly to ICA's agents, specifically including the AGENTS."))  If
Plaintiffs amend their complaint again, they are encouraged to use clearer designations.

1   (FAC, ¶ 41.)  Likewise, the "Lanham Act" section doesn't include allegations showing these

2   Defendants (or anyone) misused its name or marks, but only alleges they distributed

3   materials very similar to the VEBS copyrighted program.  (*Id.*, ¶¶ 81, 82.)  There is no

4   allegation at all in this section that anyone used VEBS' name, logo, or other mark without

5   authorization. The allegations are therefore insufficient to show § 2320 violations.

6          Padilla also argues Plaintiffs fail to allege facts that would satisfy the second element,

7   the existence of an "enterprise," citing *Boyle v. United States*, 129 S.Ct. 2237, 2245–46

8   (2009).  Plaintiffs in response argue *Boyle* is inapplicable to the pleading stage, and also

9   point to ¶¶ 39, 40, and 169–71 (corresponding to ¶¶ 42, 43, and 172–74, respectively, of the

10  FAC) as pleading the existence of an enterprise.   Plaintiffs also point out ¶ 168

11  (corresponding to ¶ 171 of the FAC) incorporates by reference all previous allegations in the

12  complaint, but they don't point out any other specific allegations.

13         The Court agrees that *Boyle* is applicable here, because it explains the nature of an

14  enterprise for RICO purposes.  *See* 129 S.Ct. at 2244 (discussing the nature and features

15  of an association-in-fact enterprise).  The Third Circuit has addressed and rejected this same

16  argument:

17         [I]t is clear after *Twombly* that a RICO claim must plead facts plausibly
           implying the existence of an enterprise with the structural attributes identified
18         in *Boyle*: a shared "purpose, relationships among those associated with the
           enterprise, and longevity sufficient to permit these associates to pursue the
19         enterprise's purpose."

20  *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 369–70 (3d Cir. 2010) (quoting

21  *Boyle*, 129 S.Ct. at 2244); *see also id.* at 369 and n.66 (considering and rejecting argument

22  that because *Boyle*'s holding pertained to jury instructions, it was inapplicable at the pleading

23  stage).

24         Paragraphs 42 and 43 of the FAC refer to parties to the Marketing Agreement (*i.e.*,

25  Plaintiffs and ICA) and key terms, and the Confidentiality Agreement, an exemplar of which

26  is attached to the FAC as Ex. B.   Paragraph 43 doesn't identify the parties to the

27  Confidentiality Agreement, though it refers to the responsibilities of Lori Roediger and "ICA's

28  agents."  The parties as shown in the exemplar are VEBS Systems and ICA.  There is also

a blank labeled "Rep Name or Comp name" (*sic*), but no other parties except Lori Roediger are alleged or otherwise mentioned.  As discussed in note 2 *supra*, the undefined term "ICA's agents" doesn't identify any particular parties.

Paragraphs 172–174 don't allege any facts that would show an enterprise.  The only factual allegations are set forth in the second sentence of ¶ 172 and ¶ 173, which allege the type of entities involved and their behavior, but show nothing about the form, structure, or even existence of any enterprise.  The first sentence of ¶ 172 and all of ¶ 174 are merely conclusory allegations, naming the elements of an enterprise and alleging they are met. Under *Twombly* and *Iqbal*, mere "labels and conclusions" or formulaic recitation of elements are insufficient.  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  The only other section of the FAC Plaintiffs have identified is a paragraph incorporating by reference all previous allegations.  But merely pointing to large undifferentiated portions of the FAC is inadequate.  The "enterprise" element of a RICO claim, as required under *Boyle*, is therefore inadequately pleaded in the FAC.

Padilla also points out that, to maintain a § 1962(c) claim, Plaintiffs must plead facts showing the Defendants conducted or participated (directly or indirectly) in the conduct of the enterprise's affairs.  *See Boyle*, 129 S.Ct. at 2243 (quoting § 1962(c)).  Because the FAC's allegations only pertain to ICA's and Lori Roediger's alleged involvement in an enterprise, it fails to state a claim against other Defendants.  The Court need not reach other arguments, which pertain to § 1962(a) or (b).  It is clear the RICO claims are inadequately pleaded and must be dismissed.

## B.   Conspiracy

This claim is brought under California law.  To prevail on this claim, Plaintiffs must establish "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct."  *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (Cal. App. 2 Dist. 1995).  Civil conspiracy is not an independent tort, but requires a showing that two or more persons have agreed to a common plan or design to commit a tortious act.  *Id*. at 1581–82 (citations

omitted).  "The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose."  *Id*. (citing *Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 785–86 (1979); *People v. Austin*, 23 Cal. App. 4th 1596, 1607 (Cal. App. 2 Dist. 1994)).

Padilla points to ¶ 38, which alleges "At all materials [*sic*] times set forth herein, Defendants conspired to secretly and without permission, consent, or license, misappropriate and infringe upon the protected materials set forth above."  He also points out the FAC's extensive allegations showing that Defendants, at least initially, were authorized to have and use the materials, and paid for this privilege.  Padilla argues the FAC lacks any factual allegations showing he or the other Defendants conspired together to misappropriate Plaintiffs' property or infringe on Plaintiffs' rights, and also lacks allegations regarding actual knowledge of the existence of a scheme or its unlawful purpose.

The Court applies federal rules to determine whether claims have been pleaded with adequate particularity.  *Kearns v. Ford Motor Co.*, 567 F.3d 1125, 1225 (9th Cir. 2009). Though claims of civil conspiracy to commit fraud or to violate California's consumer protection statutes are subject to heightened pleading standards under Rule 9(b), ordinary civil conspiracy claims, are not.[4]  *Id*. at 1125 (California Consumers Legal Remedies Act and Unfair Competition Law) (citations omitted); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 31862, slip op. at *9 (W.D.Wash., Jan. 3, 2011) (noting claim premised on fraud triggers heightened pleading standard) (citations omitted).  To the extent the conspiracy claim is premised on claims of fraud or violation of California's Unfair Competition law, it must meet the Rule 9(b) standard.

The "Civil Conspiracy" claim (claim 20, ¶¶ 178–84) primarily alleges all Defendants conspired with each other to violate various provisions of law.  The generalized allegations include fraud and violations of "federal and state unfair competition laws."  To the extent this claim is premised on fraud or violations of California's Unfair Competition Law, it clearly fails

---

[4] Claims brought under certain other provisions of law, not applicable here, are also subject to heightened pleading standards. *See, e.g.*, *Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir.1997) (recognizing heightened pleading standard for conspiracy to violate civil rights).

to meet the heightened pleading standard.  But it fails even the ordinary Rule 8 standard, because it does not make adequate factual allegations.  Most of the allegations in this section are merely formulaic recitations and legal conclusions concerning nonspecific violations of laws. This section does include some factual allegations, but they fall short of showing a civil conspiracy under California law.

Padilla is correct that the FAC is somewhat contradictory; it says Defendants were authorized for some time to use the copyright-protected materials yet also says at all relevant times their use was unauthorized.  It also fails to make clear when Defendants allegedly did various allegedly infringing acts; if they did so while authorized to use the works, their actions may have been authorized.

But more than that, the complaint fails to say what Padilla and the other Defendants joining in his motion did.  Plaintiffs point to ¶ 50 of the complaint (corresponding to ¶ 53 of the FAC) as alleging that Padilla created a derivative work.  But this allegation pertains only to Padilla, and doesn't show any kind of conspiracy among Defendants.  Furthermore, the FAC is rather vague about what materials were allegedly copied, shared or used, broadly defining the materials as including various types of things.  (*See* FAC, ¶ 34.)

In short, looking at the civil conspiracy allegations, the Court is unable to determine what it is these Defendants are alleged to have done.

### C.    Copyright Infringement

Because as noted in section II the motions pertaining to personal jurisdiction depend on adequate allegation of a copyright infringement claim, the Court must consider whether the FAC adequately states a claim.  The Court will also consider similar claims such as misappropriation of trade secrets and proprietary materials, because they may be subject to a similar analysis.

The FAC is rather vague about what was allegedly shared, copied, or used.  For example, a "Power Point Presentation," some booklets, a "presentation," and a retirement calculator are collectively referred to as the VEBS Program.  (FAC, ¶ 34.) Because they are publicly presented and shared with audiences, they are obviously not confidential, and no

factual allegations show why these would be trade secrets.  *See Spring Design, Inc. v. Barnesandnoble.com, LLC*, 2010 WL 542556, slip op. at *4 (N.D.Cal., Dec. 27, 2010) (discussing California's trade secret law).  Of the mentioned items, only some of the booklets are protected by a registered copyright.  The "presentation" is likely not copyright-protected, *see United States v. Moghadam*, 175 F.3d 1269, 1273–74 (11th Cir. 1999) (discussing the types of works that may be subject to copyright protection), and it is not even clear what the retirement calculator is.

Because Defendants were, until at least March, 2009, authorized to use VEBS' copyright-protected materials, the timing of any alleged violations is significant.   In the "Continuing Violations" section, the FAC alleges Padilla was continuing to use "proprietary and copyrighted materials associated with the VEBS Program" in his business as late as October of 2009. (FAC, ¶ 59) and that Defendants distributed, used, copied, and created derivative works from "VEBS Program materials." (*Id*., ¶ 60.)  But allegations pertaining to use of "VEBS Program" materials don't state a claim for infringement or misappropriation of trade secrets.  Paragraph 60(d) does say "Defendants delivered the copyrighted VEBS Program materials to a publisher for additional copying," but doesn't say any copying took place.  Because ¶ 59 alleges Padilla used copyrighted materials in his business after the Termination Agreement, this states an infringement claim against Padilla, but no one else.  Paragraph 60 is too vague and incomplete to support infringement or other claims.

Paragraph 61 is merely an allegation against ICA for non-payment.  Paragraph 62 alleges future plans to infringe.  It does say ICA and the Agents created a "derivative work" of the "VEBS Program, " but as noted, the VEBS Program is not necessarily protected.  And merely alleging something is a "derivative work" is a legal conclusion.  *Cf. Teevee Toons, Inc. v. DM Records, Inc.*, 2007 WL 2936311 at *1 (S.D.N.Y., Oct. 30, 2007) (finding testimony that certain works constituted derivative works was a legal conclusion and thus inadmissible); *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, 2010 WL 4366990 at *13 (S.D.Tex., Oct. 27, 2010) (holding that, to the extent  a witness  was testifying that certain / / /

drawings were a "derivative work under copyright law," the testimony offered an improper legal opinion).

This is immediately followed by the Copyright Infringement claim.  As before, this section refers simply to "VEBS Program materials," not specifically to the brochures protected by registered copyrights.

Considering all the FAC's allegations, the Court finds the Rule 8 pleading standard, as explained in *Twombly* and *Iqbal*, is not met here.  "[T]he plaintiffs here have not nudged their claims across the line from conceivable to plausible," so this claim cannot stand.

**IV.     Motion for Temporary Restraining Order (Docket No. 61)**

To obtain either a preliminary injunction or temporary restraining order, a plaintiff must show, among other things, a likelihood of success on the merits or at least serious questions going to the merits. *Alliance for the Wild Rockies v. Cottrell*, ___ F.3d ___, 2011 WL 208360, slip op. at *7 (9th Cir., Jan. 25, 2011).  Because the FAC is being dismissed, Plaintiffs cannot show either at this time, and the motion must be denied.

**V.     Conclusion and Order**

Because Plaintiffs have not shown why venue is proper as to claims against Defendants Gonzalez, Miller, Feldman, Friedman, and Premier Financial Solutions, these Defendants' motions to dismiss are **GRANTED** and claims against them are **DISMISSED WITHOUT PREJUDICE**.

The motion of Defendants ICA, APS, Jeff and Lori Roediger, and Rodman to dismiss claims against them for improper venue is **GRANTED**, but without prejudice to the parties seeking reconsideration later, as noted above.

Although the Court finds the FAC adequately alleges some RICO predicate acts, it does not adequately allege the existence of an enterprise or the participation of Defendants. The motions by Defendants Padilla, Dzama, APS, Feldman, Friedman, Gonzalez, ICA, Miller, Rodman, the Roedigers, Parrish, and the Chalmers Insurance Agency to dismiss RICO and civil conspiracy claims (Docket nos. 4, 21, 26, 33, 58) and are therefore **GRANTED** and these claims are **DISMISSED WITHOUT PREJUDICE**.  While Defendants

did not specifically seek dismissal of the copyright claims or Lanham Act claims, analysis of these claims was necessary to determine venue and jurisdiction questions.  Because the Court has determined these claims are inadequately pleaded, they are likewise **DISMISSED WITHOUT PREJUDICE**.  With the dismissal of these claims, FAC fails to adequately plead any of the federal claims.  Because the FAC fails to adequately raise a federal question and because the parties are not diverse, Padilla's request to dismiss the FAC, in which other Defendants have joined, is **GRANTED** and the FAC is **DISMISSED WITHOUT PREJUDICE**.

Plaintiffs' motion for a temporary restraining order is **DENIED.**

**IT IS SO ORDERED**.

DATED:  March 24, 2011

**HONORABLE LARRY ALAN BURNS**
United States District Judge

10cv0834